EDWARD C. WALKER AND BRYANT WALKER, EXECUTORS,
ETC., v. CHARLES W. CASGRAIN, IMPLEADED
WITH DANIEL GERMAIN.

*Land contract—Vendor's lien—Equity jurisdiction—Parties—Mis-
joinder—False representations of value.*

1. Equity has jurisdiction to enforce a vendor's lien under a land
   contract upon the failure of the vendee to pay the purchase
   price of the land; citing *Fitzhugh v. Maxwell*, 34 Mich. 138.

2. Where a bill is filed by the vendor in a land contract against
   the vendee and a former owner of the land, who negotiated
   the sale for the vendor, to enforce a vendor's lien, such former
   owner alone can raise the question of his alleged improper
   joinder as a defendant.

3. A vendee in a land contract, who is not a stranger to real-estate
   transactions, and who not only exercised his own judgment,
   after a personal examination of the land, as to its value in
   making the purchase, but relied upon the judgment on that
   subject of a third party, to whom he intrusted the matter of
   such purchase, and who alone saw the agent of the vendor
   who negotiated the sale, cannot avoid the sale, or defeat a
   recovery of the purchase price, on the ground of false repre-

sentations as to the value of the land, made by the agent to such third party, and by him reported to the vendee.

Appeal from Wayne. (Hosmer, J.) Argued June 21 and 22, 1894. Decided September 25, 1894.

Bill to enforce a vendor's lien under a land contract. Defendant Casgrain appeals. Decree affirmed. The facts are stated in the opinion.

*Walker & Walker* (*J. H. Maguire*, of counsel), for complainants.

*James H. Pound*, for appellant.

McGRATH, C. J. This is a bill filed to enforce a vendor's lien under a land contract.[1] Defendant Germain was the former owner, and had given a mortgage to Eunice J. M. Ford, who had foreclosed, and was the purchaser at the sale. After the sale, Mrs. Ford had given Germain an option on the premises, and Germain negotiated the sale to the defendant Casgrain for the sum of $4,500. A contract was entered into between Mrs. Ford and Casgrain, dated February 13, 1892, which called for the payment of $1,900 on delivery of contract, and the remainder in quarterly payments. On the down payment Casgrain paid $400 in cash, and turned out a horse at an estimated value of $1,500. The first quarterly payment was not made, and this bill was filed July 30, 1892, joining Germain as a party defendant. Casgrain answered, denying that Germain had any right or interest in the premises; alleging that, if said Germain had or claimed

---

[1] The bill was filed by Eunice J. M. Ford in her lifetime. After her death the suit was revived in the name of Corydon L. Ford, as her executor, and upon his decease the suit was prosecuted by the present complainants as executors of the will of Corydon L. Ford.

any such right or interest, the same was known to complainant and her solicitor at the time of the execution of the contract, and that such information was withheld from defendant Casgrain for the purpose of inducing him to enter into such contract, and that such withholding was a fraud upon defendant's rights; denying that it was agreed or understood that such contract was to operate as a mortgage; and alleging that complainant had an adequate remedy at law upon said contract.

The cause was at issue December 7, 1892, and came on to be heard, upon pleadings and proofs, February 13, 1894, when defendant asked leave to file an amended answer, which was refused. The amended answer sets up that complainant obtained defendant Casgrain's signature to the contract by fraud of her agents and representatives; that defendant was ignorant of the true value of the land; that complainant, by her agents, represented that the land was worth $4,500, whereas in fact it was worth but $2,500; that defendant relied implicitly upon the representations so made; that defendant recently learned that complainant, although the apparent legal owner of the land, had some secret agreement with Germain whereby a portion of the proceeds were to be paid to him; that, had he known of Germain's interest, he would have been more on his guard in relying on the representations of Germain. The whole matter was gone into upon the proofs, and, at the close thereof, defendant renewed his motion to amend, which was again denied, the court remarking that the proofs did not meet the answer.

It is unnecessary to discuss the question of the refusal of the court to permit the amended answer to be filed. It appears by the proofs that defendant intrusted the matter of the purchase, and the exchange of his horse as a part of the consideration, to one Albert; that the price was fixed for both property and horse between Albert and

Germain; and that Casgrain, during the negotiations, saw Albert only. Casgrain insists that Albert told him that complainant's solicitor represented the property to be worth $4,500, and that he (Casgrain) relied upon this report. Albert was called as a witness by defendant, and says that he made the statement of value to Mr. Casgrain, "relying on the representations that had been made to me of the value, and judging of it by surrounding property," and that Casgrain "told me that he did not know much about the property, and that if I thought it was all right, and that it was a good exchange, why he would make it." It also appears that Casgrain had had another real-estate deal with Albert, and, in answer to a question, he admits that in both transactions he relied upon Albert's representations as to value. It further appears that, pending the negotiations, Casgrain made a visit to the property, and viewed it in his own behalf.

It is clear from this record that defendant Casgrain was not a stranger to real-estate transactions, and that he not only exercised his own judgment after a personal inspection of the premises, but took the judgment of a third person upon the question of value. A mere naked representation as to value, made under ordinary conditions, where the facilities for information are available, and no confidential relations exist, is not sufficient to avoid a sale. Some artifice must have been employed under such circumstances to aid the deception. No impairment of the vendee's mental faculties is here asserted. He was upon the ground. The sources of information were open to him. No artifice was made use of to induce a reliance upon the representations, or to prevent full inquiry and examination. There was no hasty action. No fact was stated which indicates an attempt to fortify such representation. No relation of trust or confidence existed between the parties. There was

nothing to indicate to the vendor, or to any of the parties interested in the sale, that any confidence or trust was being reposed in the vendor, or in any party here charged with fraud, or that any reliance was being placed upon the representations made by them. The transaction is unaccompanied with any of the incidents which are held to give color to such representations, and to impart to them a fraudulent character.

If Germain was improperly joined as defendant, he alone could raise that question. *Sweet v. Converse*, 88 Mich. 1.

Neither is there any force in the objection that equity has no jurisdiction to grant the relief prayed. While complainant holds the legal title, defendant Casgrain is the owner in, equity. The claim of the vendor is but an ordinary money debt, secured by the contract. In *Fitzhugh v. Maxwell*, 34 Mich. 138, the vendor filed a bill asking for a forfeiture, but with a prayer for general relief. The court below decreed a forfeiture, unless the amount found due was paid by a certain day; but this Court reversed that decree, and, under the prayer for general relief, entered a decree here providing for a sale to satisfy the amount due to the complainant.

The decree is affirmed, with costs to complainants.

LONG, GRANT, and HOOKER, JJ., concurred. MONTGOMERY, J., did not sit.