MUNRO v. STEINHAUSER.

VENDOR AND PURCHASER—RESCISSION—FRAUDULENT REPRESENTATIONS.

On a bill to enjoin summary proceedings, for the rescission of a land contract on the ground of fraud, and to declare a lien upon the premises for the amount paid on such contract, representations by defendants' agent, upon inquiry, that a nearby uncompleted house had been

purchased by a negro but that he had sold it to white people, when in fact he had not sold it but continued in ownership, and, when completed, went into occupancy thereof, *held*, sufficient to justify a decree for plaintiff.

Appeal from Wayne; Mandell (Henry A.), J. Submitted October 26, 1921. (Docket No. 112.) Decided December 22, 1921.

Bill by Elizabeth M. Munro against Fred C. Steinhauser and another to enjoin summary proceedings, for the rescission of a land contract on the ground of fraud, and to declare a lien upon the premises for the amount paid. From a decree for plaintiff, defendants appeal. Affirmed.

*Guy A. Miller,* for plaintiff.

*Eugene L. Mistersky* and *William K. Campbell,* for defendants.

MOORE, J. This is a bill filed to enjoin summary proceedings for the foreclosure of a land contract, to enforce a rescission by the vendee on the ground of fraud, and to declare a lien upon the premises for the amount paid by the vendee. Plaintiff had a decree in the court below, and defendants appeal. The record shows plaintiff is a married woman living with her husband and two children aged four and eight years. Defendant, Mr. Steinhauser, had for sale a house at 109 South Marlborough avenue, Detroit. Mr. Chase was Mr. Steinhauser's manager and was intrusted with the duty of selling the house in question. He placed it in the hands of the Crawford-Helmkamp Company, a real estate agency. A salesman named Ticknor was sent to plaintiff's residence, and took her to the Marlborough avenue house. It is her claim that in the course of the inspection she noticed a house under construction diagonally across the way and

distant about 150 or 200 feet from defendant's house, with regard to which the following talk took place, according to her testimony:

"And I asked, 'What about that place across the way?' And he said to me: 'Why, Mrs. Munro, there is a little story about that house,' he said, 'it was occupied—it was owned by Doctor Johnson at one time, and he is a negro, but' he said 'folks around there objected so highly that they got a petition out and took it to him; they had a meeting at the high school and ousted these negroes out, and they have sold to white folks, and you can rest assured, you will see them start to pull out. They are white people, and you have got nothing to fear.' "

It turned out afterwards that this representation was not true and that the negro at that time owned the house and owned it at the time of the trial, finished it, and, a few months after plaintiff moved into her home, moved into it and was living in it at the time of the trial.

It is claimed that on the evening of the day when this representation was made, a preliminary agreement of purchase was entered into and a payment of $500 was made to the agents, and subsequently turned over to Mr. Chase for the plaintiff. The purchase price was $19,000. It was stipulated that certain improvements were to be made and that possession was to be given about May 18th. May 1st an additional $500 was paid, and May 18th an additional $2,000, making in all $3,000. Subsequently $300 were expended on permanent improvements, and an additional $175 was paid on the contract, and for insurance.

William D. Munro, plaintiff's husband, testified:

"On the 28th of April, when this check was given, I had a talk in regard to the neighborhood. Mrs. Munro had recited to me regarding the story of the house across on the corner, diagonally across from us.

I just merely had Mr. Ticknor again go over the situation with the assurance that the house had been sold; that Doctor Johnson had sold the house, or the colored party—I don't believe the name was mentioned at that time—had sold the house and white people had it, due to the neighbors having seriously objected, and he decided that he probably hadn't better live there. I certainly would not have sanctioned its being bought at all if I had known that these premises across the road were owned by a colored man.

\*　　\*　　\*

"At that time when I gave the $2,000 check I talked to Mr. Chase about the colored people. We talked over the improvements that were supposed to have been put in there; there were a few things that still remained undone at that time and Mr. Chase assured me that they would be taken care of in due course, within the next day or so. And one thing I mentioned especially was the screens for the doors; they were made, I believe, after we moved in the house. And I then hesitated for a few minutes and asked several questions regarding the place across the street and received further assurance at that time that we had received proper information previously, that the colored party had sold the place; that it was very shortly to be completed by white people, who had purchased them a house."

Plaintiff moved into the house about May 28th. About two months later she became satisfied that Dr. Johnson owned the place. We again quote from her testimony:

"We moved into the house along about May 28th. It took about two months to gain my own assurance that I saw black and white; then one day Doctor Johnson was sprinkling the lawn, and my little boy asked him, 'What are you doing here?' and he said, 'Why, son, I own this place.' He said 'I intend to make it my home' and that sure was ground enough then to start things agoing."

In the month of August, plaintiff with her husband and brother called upon the defendant, tendered him

the contract, and demanded the return of her money. This was refused. Subsequently defendant served notice of forfeiture, and began summary proceedings to foreclose the land contract. The bill in this case was filed to enjoin this proceeding and for rescission and the return of the money paid.

Mr. Chase does not agree with the testimony offered on the part of the plaintiff as to his part in the transaction. Mr. Ticknor was not a witness. The questions involved are almost wholly questions of fact. The case does not involve any discrimination against the colored race. Dr. Johnson has an undoubted right to live where he wishes. It is equally true that Mrs. Munro has a right to select her surroundings and neighbors and to bring up her children in associations which she considers best for their good. Nor is it a question of her wisdom or whether we would agree with her. She was entitled to know the truth about the neighborhood when she inquired about it so that she could make her decision understandingly. She testified she would not have purchased had she known of the fact that Dr. Johnson owned across the street. Mr. Munro testified that he would not have consented to the purchase had he known it. The testimony is all one way as to the effect upon a residential neighborhood of having one or more negroes live therein.

The contention of the appellants is stated by their counsel as follows:

"We contend that if the statement alleged to have been made to plaintiff by the agent, Ticknor, was made, no fraud was perpetrated upon her for the reason that the parties were dealing at arm's length. Plaintiff visited the property almost daily for a period of three weeks, had lived in the immediate neighborhood for several years, and at the time of her closing of the deal, no mention was made by her of or concerning colored people.

"It is our contention and we insist that it was incumbent upon plaintiff to make all necessary inquiries of and concerning the truth or falsity of the alleged statement by Ticknor. We think the rule is well defined in the case of *Walker* v. *Casgrain*, 101 Mich. 604."

Counsel also cite other cases, including *Hammer* v. *Martin*, 205 Mich. 359. These cases do not support the contention of counsel. Indeed, the case of *Hammer* v. *Martin, supra*, at page 365, is an authority strongly in favor of the contention of the plaintiff, as are the following cases: *Pound* v. *Clum*, 204 Mich. 28; *Hillier* v. *Carpenter*, 206 Mich. 594; *Barnhardt* v. *Hamel*, 207 Mich. 232; and *Albright* v. *Stockhill*, 208 Mich. 468, 481.

The decree is affirmed, with costs to the plaintiff.

STEERE, C. J., and WIEST, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.