NAT WEBB, JR., AND PAUL WEBB, MEMBERS OF THE PARTNERSHIP OF WEBB BROS., PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33070.   Promulgated April 21, 1931.

*Andrew G. Elder, Esq.,* and *Joseph Nievinski, Esq.,* for the petitioners.

*A. H. Murray, Esq.,* for the respondent.

OPINION.

LANSDON: Each of the parties here has had much difficulty in computing the profit which the partnership realized from the sale and subsequent repossession of a sheep ranch in the circumstances set out above. At some time since 1919 each has occupied the position now defended by the other, but no actual meeting of minds and settlement has deprived this Board of the privilege of deciding the issues in controversy.

In its original return of income for 1919, the partnership treated the sale of the ranch as a completed transaction and reported gain therefrom in the amount of $11,300. More than three years later it filed an amended return for the same year in which it reported profit from the sale of the ranch as a sale of real estate on the installment basis. In such return it computed total gain of $13,245, percentage of profit 21.71, and gain realized from the cash payment received in 1919 in the amount of $3,473.60. The history of this return is not disclosed by the record, but it is fair to assume that it was made and filed in accordance with the advice of tax consultants who had then been employed by Webb Brothers. By September, 1923, it was known that Justus could make no further payments and that the gross profit reported in the original return would not be realized. It cost the partnership nothing to increase its theoretical profits on uncollectible installments and the amended return, if accepted, was the basis for claiming a substantial refund of overpaid tax for 1919.

In 1924 the partnership reported gain from the repossession of its ranch in that year in the amount of $12,967.57, apparently computed on the theory that the sale and repossession were parts of a single transaction. In this proceeding, however, it now contends that the sale in 1919 and repossession in 1924 was each a separate and completed transaction and that for Federal tax purposes the one must be considered without regard to the other. It is further asserted in support of the present theory of the petitioners that the ranch declined in value to $30,064.05 before it was repossessed and that such decline extinguishes all tax liability for 1924, regardless of whether the sale and repossession are considered as one or two transactions. Petitioners now strenuously protest and reject any suggestion that the ranch was sold on the installment basis, even though it is obvious from the record that, on the basis of the amended return filed in 1923, they received a substantial refund of taxes overpaid in 1919.

The versatile opportunism which characterizes all the acts of the petitioners throughout the years involved is easily matched in the various determinations and shifts therefrom in which the respondent has indulged. We conclude from the record that the original return was accepted and the tax shown to be due thereon was collected. It is equally clear that the amended return filed in 1923 was accepted and that such acceptance resulted in the refund of taxes overassessed and overpaid on the original return. Upon audit of the partnership return for 1924, the respondent determined a gain in that year in the amount of $25,112.62. An examination of the record indicates that no such profit was possible unless the sale and repossession are

regarded as a single transaction, with all the resulting income taxable in 1924. It is clear, therefore, that, like the partnership, the respondent has run the entire gamut of possible positions.

As finally stated at the hearing and argued in their briefs, the present contentions of the parties are clear. They now agree that the sale and repossession were two separate transactions and that tax liability for 1924 must be determined without reference to any profit that may have been realized in 1919. This is correct. The reacquisition of the ranch in 1924 must be regarded as a single completed transaction and tax liability resulting therefrom must be determined in the light of the evidence. *Edward S. Phillips*, 9 B. T. A. 1016; *A. W. Shaw*, 13 B. T. A. 716; *Home State Bank*, 15 B. T. A. 121; and *Jacob M. Dickinson, Jr., et al., Executors*, 18 B. T. A. 790.

It remains then for this Board to determine the nature of the single completed transaction in the taxable year and recompute the deficiency resulting from the gain realized therefrom. Abandoning the basis of his deficiency notice in which gain in excess of $25,000 was asserted, the respondent now contends that the repossession was the final act under a contract for sale of real estate on the installment basis and that 21.71 per cent of any part of the original sale price collected in the repossession arrangement must be included in taxable income in 1924. The present position of the petitioners is equally clear. They now contend that the transaction in 1924 was an exchange of property for property, and that gain or loss must be determined by a comparison of the value of the property received with that which was given in exchange therefor and that such a comparison indicates no taxable gain.

The respondent's contention that the transaction of 1919 was a sale of real estate on the installment basis is not supported by proved facts and the law applicable thereto. The sale price was $61,000, upon which down payments in cash and notes worth their face value and amply secured by mortgage on other real estate in the amount of $31,000 were made. At the date of the sale there was no statutory authority for reporting income on the installment basis. The partnership reported its gain on the basis of a completed transaction in which both series of notes were included in the sale price at their face value. This procedure was not in the exercise of an election, but was in conformity with the law. The installment basis for reporting income was first authorized by section 212 (d) of the Revenue Act of 1926, which provides in part as follows:

* * * In the case * * * (2) of a sale or other disposition of real property, if * * * the initial payments do not exceed one-fourth of the purchase price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this subdivision. As used in this subdivision, the term "initial payments" means the payments received in cash or property

other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.

Section 1208 of the Revenue Act of 1926 also provides as follows:

The provisions of subdivision (d) of section 212 shall be retroactively applied in computing income under the provisions of the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, the Revenue Act of 1921, or the Revenue Act of 1924, or any such Acts as amended. * * *

Even if only the cash received in 1919 is regarded as the down payment, it is obvious that the transaction does not come within the statutory definition of a sale of real estate on the installment basis, since the amount thereof was in excess of 25 per cent of the sale price. The contention of the respondent can not be sustained. *George Antonoplos*, 3 B. T. A. 1236; *Gertrude H. Sweet*, 8 B. T. A. 404; *Henry Heldt*, 16 B. T. A. 1035.

Our conclusion that the respondent erroneously contends that the transaction of 1919 was a sale on the installment basis does not, in any way, affect the real issue here. A deficiency has been asserted and, regardless of the basis therefor, the respondent's determination as to the amount thereof is presumed to be correct, and the burden to establish a basis for recomputation is on the petitioner. *Avery* v. *Commissioner*, 22 Fed. (2d) 6; *J. M. Lyon*, 1 B. T. A. 378; *Norfolk Southern Railroad Co.*, 22 B. T. A. 302. In the deficiency notice, which is the basis for this proceeding and of our jurisdiction of the issues involved, the respondent asserts that the partnership realized taxable income in 1924 in the repossession of its ranch. To secure any recomputation by the Board the petitioners must prove either that no such income was realized, or if realized, that it was in an amount different from that asserted by the respondent.

In *Henry Heldt, supra*, the questions presented were similar to the issues here. The facts there showed the sale of a property for $60,000 in 1920, with a down payment of $20,000 and note secured by mortgage on the property sold in the amount of $40,000, and that in 1924, the vendor repossessed the property by foreclosure, upon the payment of $1,000 and surrender of the overdue purchase money note. The net cost of the property to the vendor was $35,362.50, and its fair market value at date of repossession was $37,000. The Commissioner determined that upon repossession the vendor realized a gain of $20,637.50, and the Board affirmed his determination. That result was reached by allocating cost to the surrendered notes and mortgage equal to the difference between the cost of the property and the cash payment, or $15,362.50, adding the cash payment of $1,000 thereto and subtracting the sum thereof from $37,000, the fair market value of the farm at date of repossession.

1254

The facts here are that, with due allowance for depreciation, the ranch and the sale commission cost the petitioners $47,605, and that the sale price was $61,000. The vendor received $16,000 in cash, a series of notes secured by a mortgage on other assets which the parties agree were worth their face value when received, and a second series of notes of the face value of $30,000. It is evident, therefore, that the two series of notes cost the petitioners $31,605 and that the $30,000 note cost $16,605. Since this latter note was exchanged for property of the fair market value of $30,064.05, it follows that the partnership realized a profit of $13,459.05, of which one-half, or $6,729.53 is taxable income to each of the petitioners in the year 1924. *Henry Heldt, supra.*

*Decision will be entered under Rule 50.*