# E. E. ATKINSON & COMPANY v. NEISNER BROTHERS, INC.[1]

## No. 30,048.

### January 4, 1935.

[1]Reported in 258 N. W. 151, 259 N. W. 185.

*Leonard, Street & Deinard,* for appellant.

*Junell, Driscoll, Fletcher, Dorsey & Barker, Clark R. Fletcher, David E. Bronson,* and *Harry A. Blackmun,* for respondent.

HOLT, JUSTICE.

Defendant appeals from the order denying its motion for a new trial.

The action is a consolidated suit to recover rents of a business property in Minneapolis leased by plaintiff to defendant, by a written lease entered into November 16, 1927, covering a term from February 1, 1928, to February 28, 1940, at an annual rental of $60,000, payable in monthly payments of $5,000 in advance on the first day of each month. There were nine separate suits brought to recover such monthly rentals. They were consolidated into one action and so tried to the court. Findings were made in plaintiff's favor and judgment ordered accordingly. It is admitted that defendant was and is in possession and occupation of the leased premises and has not paid the rent sued for.

By way of answer to each of the separate suits and to the consolidated action the defendant interposed a cross bill. At the trial plaintiff introduced its evidence making out a *prima facie* case and rested. Defendant then sought to introduce evidence to substantiate the allegations of its cross bill. Objections were made that it failed to state facts sufficient to constitute any defense and cause for relief. The objections were sustained. Defendant then made offers of proof, to which objections were made and sustained. Exceptions to the rulings were taken. These rulings present the main

reason for the appeal. There are also some assignments of error directed to the contentions: (a) That in view of the "gold clause" in the lease an award of $5,000 as monthly rent is excessive; (b) plaintiff was without capacity to sue as to the first two instalments of rent sued for; and (c) suit for the April, 1933, instalment is barred because plaintiff attempted to split a single cause of action.

The answer "for a separate defense, set-off, counterclaim and bill for equitable relief" fills more than 20 pages of the printed record and must be condensed to a mere outline in this opinion. Plaintiff, a Minnesota corporation, obtained a lease to 709, 711, 713 Nicollet avenue, from the fee owner, the Waldheim Realty & Investment Company, a Missouri corporation, for the term of 20 years beginning with March 1, 1920, and ending with February 29, 1940, at the rent of $22,500 a year for the first three years, $25,000 a year thereafter until the end of February, 1935, and $30,000 a year for the last five years of term, such rent to be paid in equal monthly instalments, together with all taxes and assessments, and to keep the buildings insured. The leased premises consist of a six-story store building and basement. On November 16, 1927, plaintiff sublet the basement, the ground or store floor, and the fifth floor of said premises for the term beginning February 1, 1928, to February 28, 1940, on the terms first above stated. The lease from Waldheim Realty & Investment Company to plaintiff is designated as the head lease, and the one from plaintiff to defendant is referred to as the sublease. It is not necessary to set out the various covenants in the two leases except to say that the head lease does not require the lessor to furnish heat, but plaintiff, as lessor in the sublease, covenants to heat the premises sublet to defendant, the heating plant being located upon adjoining property. The sublease was made subject to the terms and conditions of the head lease. In both leases were the usual covenants for reëntry upon default, and for possession and quiet enjoyment upon payment of rent and performance by the lessee of the covenants of the lease. The payment of taxes, assessments, and insurance on the building is placed upon the lessee in the head lease. The lessee in the sublease does not pay taxes on the premises sublet.

It is alleged that to induce defendant to enter the sublease plaintiff falsely represented that it occupied the adjoining premises known as Nos. 701, 703, 703½, 705, 707 Nicollet avenue and 81-83 South Seventh street appurtenant and connected therewith, wherein plaintiff represented itself as owner of the department store therein conducted. That plaintiff represented that it owned property worth in excess of $1,000,000 over its liabilities; that it would continue to own and operate its own business in the buildings then occupied as its department store during the existence of the sublease; that it would continue financially responsible and able promptly to pay and perform what the head lease required of the lessee; and that in reliance on these representations defendant entered the sublease, took possession of the premises, and made extensive improvements, with the consent of plaintiff, which improvements are of such character as not to be removable; that defendant installed valuable fixtures and fittings and a stock of merchandise and has built up and established a valuable business as a retail store known as a 5¢ to $1.00 department store, having an investment therein in excess of $100,000, which is alleged to be practically worthless except as it may be used to conduct defendant's business in the premises, all of which plaintiff had and has knowledge. That about February 15, 1933, defendant learned that prior to the execution of the sublease the National Department Stores, Inc., a New York corporation, had acquired the department store, with all assets, theretofore owned and conducted by plaintiff adjacent to the premises described in the sublease; and that when the sublease was executed plaintiff owned no property except the head lease, and it is now indebted in excess of $500,000, is insolvent, and has lost all rights in the head lease. It is alleged that the second half of the taxes for 1932 was unpaid and that the lessor in the head lease is about to give notice of termination thereof; that the National Department Stores, Inc. was adjudged a bankrupt on April 11, 1933, and trustees in bankruptcy are now in possession carrying on the business; and that the trustees have disavowed the leases under which the bankrupt held the premises 701 to 707 Nicollet avenue and 81-83 South Seventh street. It·is also alleged

that a proceeding in involuntary bankruptcy against plaintiff is pending and undetermined because plaintiff has interposed an answer thereto. The answer also avers that prior to the sublease the heating plant for the department store of plaintiff (or its successor in business, the National Department Stores, Inc.) and for the premises in the head lease and sublease had been constructed and was operated on 81 and 83 South Seventh street, and there is no space for constructing a separate or independent heating plant on the premises let to defendant, and that plaintiff falsely represented that it was in possession and control of said heating plant when it induced defendant to enter the sublease. By reason of the facts alleged in the answer defendant claims damages in the sum of $100,000 and asserts that it is entitled to a decree rescinding and cancelling the sublease upon such terms as may be equitable "so that the rental heretofore accrued under the language of said lease may be applied against the claim of defendant for damages and so that defendant may be permitted to possess and occupy said premises without payment of rent until defendant has paid and satisfied its entire claim for damages, and that then and in such case and at such time as the court may think just the said lease be wholly rescinded and cancelled, and defendant relieved and discharged from all liability thereunder."

The offered and excluded proof, as far as necessary to show defendant's theory of the cross bill, may be thus condensed: E. E. Atkinson & Company was incorporated under the laws of this state in 1906 and succeeded to the department store business theretofore conducted by E. E. Atkinson individually, the shares of stock being issued to Mr. Atkinson and members of his family. The net worth of the corporation in 1907 was $107,488, which had increased to $1,250,000 in September, 1924. It then held under ground lease the four-story building north of the six-story building, part of which was sublet to defendant; it also held on such lease and owned the building across the alley in rear of defendant's present leasehold. The building across the alley was known as the annex and fronted on Seventh street. Overhead passageways, across the alley, connected the buildings. The heating plant for all the buildings was

located in the annex. All the buildings, except that part now held by defendant under its sublease, were occupied by the department store operated under the name of E. E. Atkinson & Company; but about September, 1924, the shares of stock in plaintiff corporation (with the exception of a few qualifying shares) were acquired by the National Department Stores, Inc., and thereupon plaintiff transferred all its assets, except the head lease mentioned, to the National Department Stores, Inc., the latter thereafter conducting and advertising the business in the name of plaintiff, listing the property for taxation under that name. In making the sublease to defendant, plaintiff represented itself as owning the business and properties used in the department store; that it owned and was in control of the heating plant; that its business was well established and profitable; that it would continue to own and operate the same and would remain financially responsible during the sublease; that these representations were made orally and by reports to mercantile agencies; that these representations were false; and that plaintiff fraudulently concealed from defendant that the National Department Stores, Inc. was then the owner of and was conducting the department store under and in plaintiff's name. The offer of proof also included matters of an argumentative nature, such as that defendant depended on the department store to continue to advertise its business and thereby attract customers to defendant's neighboring store. It also offered to prove that the National Department Stores, Inc. conducted a speculative and unprofitable business so that on April 11, 1933, it was adjudged a bankrupt, and trustees in bankruptcy were appointed and are now in possession of the business; that plaintiff is insolvent, and proceedings are pending to put it into involuntary bankruptcy, but it is resisting. Defendant offered to prove that it renounced the sublease upon discovery of the falsity of the representations, and that it remained in possession to recoup its damages, which it offers to show were $100,000. The offer also included proof that plaintiff's charter expired on September 19, 1926, but the corporation continued under the provisions of 2 Mason Minn. St. 1927, § 7485, to September 19, 1929. There are offers of various conclusions of law, not necessary

to mention here, and an offer relative to the effect of the "gold clause" in the sublease on the amount of the stipulated rent, but on the oral argument any claim to a reduction because thereof was abandoned.

Ordinarily, where a contract has been entered into in reliance upon representations regarding the subject matter of the contract which are not true, the party deceived is entitled to rescission. It is not essential to show that the misrepresentations caused loss or damages. It is enough if they were material so that the party complaining did not receive by the contract substantially what he would have received had the representations been true. We need only refer to Pennington v. Roberge, 122 Minn. 295, 142 N. W. 710; Fawkes v. Knapp, 138 Minn. 384, 165 N. W. 236; Saupe v. St. Paul Trust Co. 170 Minn. 366, 212 N. W. 892; Pohl v. Mills, 218 Cal. 641, 24 P. (2d) 476. Neither the allegations in the cross bill nor the offer of proof relate to any misrepresentations in respect to the property covered by the sublease, nor to that embraced in the head lease to which the sublease was made subject. So defendant got by the written contract precisely what it covered and purported to give. The representations relate to the financial condition, present and future, of a department store conducted in property adjacent to the premises sublet to defendant. Where property is sold or leased upon representations that other near-by property will be improved or devoted to such use as materially to affect the value or use of the property sold or leased, it is readily seen that the representations, if relied upon, would be material. Examples of such cases are McElrath v. Electric Inv. Co. 114 Minn. 358, 131 N. W. 380; Riskind v. Frank Meline Co. Inc. 124 Cal. App. 628, 13 P. (2d) 383; Coral Gables, Inc. v. Barnes, 247 Ky. 292, 57 S. W. (2d) 18; Lynch v. Palmer, 237 Mass. 150, 129 N. E. 374, 33 A. L. R. 842; Munro v. Steinhauser, 217 Mich. 137, 185 N. W. 678; Williams v. Kerr, 152 Pa. 560, 25 A. 618. But it seems to us that the representations upon which the cross bill is based are not such as defendant could place reliance upon, nor can they be regarded as material. They neither relate to the leasehold nor do they affect the value or use of the leasehold.

The contracting parties here were both mercantile corporations. Defendant knew that representations regarding the future financial stability and prosperity of such corporations cannot be made with any degree of certainty. It also knew that the control of corporations may change overnight by the transfer of its shares of stock. The representations that plaintiff would continue to operate the department store at great profit must be relegated to mere trade talk or boasting. Nor fairly can it be said that representations as to plaintiff's financial standing, it being the lessor, was a material representation upon which defendant was entitled to rely. It is true that the representations as to a lessee's responsibility are material because of the obligations assumed. Kelty v. McPeake, 143 Iowa, 567, 121 N. W. 529; In re Hays, Foster & Ward Co. 117 F. 879. But it may be said that in the sublease plaintiff covenants to furnish heat and indirectly to pay the rent, taxes, and keep the building insured as lessee in the head lease. Even so, representation as to the present and future financial standing of plaintiff must be regarded as immaterial and obviously not relied upon by defendant. The sublease is a very lengthy and specific document, showing great caution taken to embody every matter of importance that might affect and govern the rights of the parties. In case of bankruptcy of the lessee the lessor may end the term. No provision is found touching the lessor's insolvency. Then there is a carefully worded provision under which, should plaintiff fail to perform the lessee's covenants in the head lease, defendant may discharge the same and apply the cost thereof upon the next monthly rent due plaintiff. The lessor in the head lease consented to the sublease, so it could not object to the performance of the covenants of the head lease by the lessee of the sublease. That this secures to defendant quiet possession and enjoyment of the full term without any loss or damage cannot be doubted, for the rent under the head lease will not exceed $30,000 a year. The taxes up to now have not exceeded $16,000. Deducting this from the yearly rent of $60,000 defendant should pay, there ought to be enough left to meet the costs of heating and insurance. The sublease provides that heat may be supplied from "outside sources"; hence is not restricted to

heating plant in the annex. When with such meticulous care defendant protected itself against termination of its leasehold, it cannot well be contended that it relied upon any representations as to the financial standing of plaintiff in making the sublease.

May the alleged false representation that plaintiff owned and conducted the department store adjoining the premises of the sublease serve as ground for rescission? The department store was there in operation and was carried on in the name of plaintiff, but it was the business of the National Department Stores, Inc., which three years before the sublease was executed had acquired all the shares of the stock of E. E. Atkinson & Company (except a few shares to keep the Atkinson corporation a going concern), and all its assets including good-will. The National Department Stores, Inc. deemed it an advantage to continue the business in the old name. In view of the changeability of corporate control, it cannot well be regarded as material whether the adjoining department store was operated by E. E. Atkinson & Company or by the National Department Stores, Inc. At any rate, there are no facts alleged which tend to show that defendant's business in the leased premises might be at all affected by the fact that the department store was owned and conducted by plaintiff corporation or by the National Department Stores, Inc. in the name of plaintiff. The allegation that defendant intended to take advantage of the advertising that the department store was doing is so without substance, even if legitimate, that it cannot be considered material or a representation on which defendant could rely. There is no averment that plaintiff promised to continue to advertise. There was no offer to prove that the sublease or head lease had been terminated. The cross bill in that respect should be held to allege a conclusion of law rather than an averment of fact.

But assuming that defendant was induced to enter the sublease in reliance upon the false representations alleged, may it retain possession until it recoups its damages and nevertheless come into court and have a rescission of the sublease decreed? Defendant cites Defiel v. Rosenberg, 144 Minn. 166, 174 N. W. 838, 839, to the effect that a tenant who has been so induced to enter a lease may,

on discovery of the fraud, recover the damages suffered. But the case is not authority for the proposition that possession may be retained until the damages are recouped. The court says [144 Minn. 169]:

"He should not be permitted to treat the contract as subsisting and go forward with performance thereof, notwithstanding the fraud, and be entitled to damages to accrue from such future performance, thus to speculate upon the fraud and be the instrument of his own loss."

Future damages cannot serve as an offset to current rent. In O'Neil v. Davidson, 147 Minn. 240, 180 N. W. 102, the rule in the Defiel case was approved, and it was held that "the lessee may not, after he has full knowledge of the fraud, remain in possession and recover damages arising through the fraud practiced during the unexpired term. He may recover all damages sustained up to the discovery of the fraud." With these rules in mind, we think the cross bill and offer of proof does not show any defense or offset to the rent sued for nor a right to have a decree of rescission. There is an allegation that defendant expended $100,000 in improvements and fixtures which would be worthless unless the term continues. The offer of proof goes no further than to show that the improvements were nonremovable. However, the term has not been terminated. Defendant was in quiet possession thereof up to the time of the trial, many months after discovery of the alleged fraud. There are no damages alleged up to the discovery of the fraud other than those resulting from the installation of the fixtures and improvements. It is not claimed that any damages to defendant's business or to the value of its leasehold resulted from any of the fraudulent representations alleged. So by the pleading and offer of proof there were no damages to recoup or offset against the rent, unless there was a rescission by the act of defendant in so notifying plaintiff. But we think it could not rescind and remain in possession. When defendant discovered that the alleged representations were false, it could have surrendered the premises, placed plaintiff *in statu quo,* and recovered for any damages suffered up

to that time; but by remaining in possession for months after such discovery it affirmed the contract. It still would be entitled to offset the damages against the rent. But, as above indicated, if the sublease is not terminated or rescinded, no damages can result because of the improvements and fixtures, since defendant will have the use thereof for the full term, as intended when installed. And by remaining for many months in the quiet possession and enjoyment of the leased premises with full knowledge of the fraud, defendant must be held to have affirmed the lease and should be denied the equitable relief of rescission. This was a leasehold. Possession was not necessary to protect or conserve it. It was not of the same character as a mercantile business with stock of goods, sold upon fraudulent representations, where the buyer, on learning of the fraud, offers to surrender possession to the seller but the latter refuses to take possession, and the buyer, to conserve the business, carries it on for the seller, meanwhile suing for rescission. Clark v. Wells, 127 Minn. 353, 149 N. W. 547, L. R. A. 1916F, 476. We know of no rule of law which allows defendant to remain in possession of its leasehold in order to recoup damages from the value of the use of the premises and have a court decree a rescission of the lease. It is not deemed necessary to refer to or discuss the many decisions cited by the parties—plaintiff cites over 200 cases. Defendant cites fewer cases, but its briefs contain nearly 200 pages. Considering that defendant has enjoyed quiet possession for half of the term and there being nothing to indicate that it will be disturbed during the balance thereof, and that there were no misrepresentations touching the leasehold defendant obtained, the attempted defense appears to be more of a move to reduce the stipulated rent than to obtain redress for alleged false representations, which so far have resulted in no damages that may be used to offset the rent admittedly due plaintiff.

Defendant urges plaintiff's want of capacity to maintain the first two suits for rent, begun prior to its renewal of corporate existence under L. 1933, chapters 156 and 193. It is conceded that because of steps taken in conformity with those statutes plaintiff's corporate existence was renewed so that it had capacity to bring the other

seven suits. It also contends that one cause of action for one month's rent was split. We think defendant is not in a position to take advantage of either claim for the reason that all the actions were consolidated for trial, and the court made this finding:

"6. That, at the time of trial of said consolidated actions, defendant incorporated all of the allegations in the separate answers and cross bills theretofore interposed in a single answer and cross bill entitled, 'cross bill in consolidated action,' which pleading superseded and replaced the prior answers and cross bills of defendant in each of said actions so consolidated, with the understanding that the replies theretofore interposed by plaintiff to the separate answers and cross bills would stand as the reply to the cross bill aforesaid and that a counterclaim for failure to heat asserted in each of the separate answers and cross bills was withdrawn from the trial but not waived by defendants; that said 'cross bill in consolidated action' does not state a defense or ground for other relief to the causes of action of plaintiff herein."

No assignment of error attacks the quoted finding except the clause following the last semicolon therein. It seems to us that with the actions thus consolidated and tried defendant may not attack plaintiff's capacity to sue for any month's rent nor assert that any cause of action was split in the several consolidated actions. It is therefore not necessary to determine whether a suit by plaintiff for rent was excluded from the benefit of L. 1933, chapters 156 and 193, because of this provision in §§ 4 of said acts: "Nor shall this act affect any action or proceeding now pending in any courts of this state in relation to any corporation in section 1 of this act."

The order is affirmed.

ON APPLICATION FOR REARGUMENT.

On March 8, 1935, the following opinion was filed:

Landlord and tenant—lease—rent—payment—"gold clause."

HOLT, JUSTICE.

Appellant petitions for a rehearing, one ground being that we misunderstood the statement of the attorneys, made at the oral argument, that the assignment of error based on the provision in

the lease that the rent was to be paid in gold coin was abandoned. It is now asserted that the intention was to submit that assignment of error upon the arguments contained in the brief. We will so dispose of it.

The clause reads:

"1. Tenant covenants and agrees as follows: (a) To pay as rental for the demised premises, a sum at the rate of Sixty Thousand Dollars ($60,000) per annum, payable in equal monthly instalments of Five Thousand Dollars ($5,000) each, in advance on the first day of each and every month of said term, including the month of February, 1940, to Lessor, at its main office, Nicollet Avenue and Seventh Street, Minneapolis, Minnesota, or at such other place·as may be designated by Lessor, its successors and assigns. Said rental shall·be payable in Gold Coin of the United States of America of the present standard of weight and fineness or its then equivalent in purchase power."

We think this provision was inserted for the benefit of the lessor, like the usual gold clause provisions respecting the payment of promissory notes, bonds, and the like by the debtor. The one to receive payments is generally in a position to dictate the medium thereof according to a standard advantageous to him. Payment in gold coin of the United States has usually been considered more advantageous to the creditor than any other money or medium. With this idea in mind, we think the word "its" in the alternative phrase means the "gold coins" of the United States of the standard of weight and fineness at the time the lease was signed. The lessor, the plaintiff, does not ask for the payment of the rent in the equivalent of the gold coin of the weight and fineness fixed at the time the lease was executed but is content to receive it in the dollars current today. And under the law as established by Norman v. B. & O. R. Co. 294 U. S. 240, 55 S. Ct. 407, 79 L. ed. 417, it would seem that the "gold clause" in this lease is of no effect and that the rent is now payable in any dollar which is legal tender.

The motion for rehearing is denied.