## Title & Trust Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 73785.   Promulgated September 10, 1935.

*J. H. Amick, Esq.*, for the petitioner.
*W. R. Lansford, Esq.*, for the respondent.

26

OPINION.

ARUNDELL: Petitioner claimed the deduction of $152,773.89 as a loss in 1931 resulting from the cancellation of certain land contracts in that year, the loss being measured by the difference between the unrecovered cost of the contracts and the depreciated value of the houses and lots which it acquired by reason of the cancellations. Petitioner's business is the acquisition of land contracts at a discount and the collection of the balance owing on them from the purchasers. It acquired by assignment from a construction company a large number of such contracts, 144 of which it found it necessary to cancel in 1931 because of nonperformance, but only 45 of these are here in question.

Petitioner now contends that it did not step into the shoes of the original vendor of the houses and lots, the Frischkorn Construction Co., and is therefore not governed by the provisions of the Treasury regulations respecting losses allowable to a vendor who repossesses land on forfeiture or cancellation of its installment contract, but that the exchange of petitioner's interest in the land contracts on cancellation for the realty was in itself a completed transaction, and as such the occasion of realizing gain or loss, the loss in the present instance to be measured by the excess of the cost of the land contracts to petitioner still unrecovered at the date of cancellation over the fair market value of the land at the time of the cancellation and consequent exchange. If we sustain petitioner's method, we must

determine as a fact what the fair market value of the land was in 1931. As, according to the statement of petitioner's counsel, petitioner has reported its income in prior years as a proportionate amount of all collections made on the contracts, the amount of the discount allowed to petitioner on its purchase by the vendor and now earned by collection being treated as income and the remainder as a return of cost, petitioner would now determine the unrecovered cost of any contract as the balance still outstanding as unrecovered cost under this method. In other words, instead of taking the cost of the contract to petitioner and deducting from it the total amount of collections to ascertain unrecovered cost, it is suggested that we take the cost, and deduct therefrom that percentage of the collections remaining after subtracting the discount. To illustrate, if the discount were 30 percent, the petitioner would have to recover 70 percent of the total contract price as its own cost. Petitioner therefore deducts 70 percent of the collections as recovered cost, to arrive at unrecovered cost at the date of the exchange.

As petitioner kept its books on the cash basis and made its return on the installment basis, we can find no objection to this method, if petitioner's major contention is sound.

Respondent contends that petitioner by its purchase of the land contracts merely replaced the Frischkorn Construction Co. as vendor and that, consequently, on cancellation of the contracts petitioner "repossessed" itself of the property and so, far from sustaining a loss, is liable for additional income in the amount of unreported installment collections less depreciation, under Treasury Regulations 74, article 353 (as amended by T. D. 4360).

The preliminary question, then, is whether petitioner in acquiring the land contracts got something substantially the same as the vendor had originally, of which on forfeiture of the contract, it could "repossess" itself. The vendor owned the land in law and equity. Under the contracts of sale the Construction Co., the vendor, retains legal title until payment of the final installment of the purchase price, when it executes and delivers to the purchaser a warranty deed. The petitioner, therefore, when it bought the contracts, received the legal title, but this was a bare legal title withheld from the individual purchaser only as a means of securing performance of the contract. The equitable title had passed to the purchaser, and the vendor, as to the land, became a trustee for the purchaser. This was settled doctrine at common law. It is also the rule in Michigan, where the vendor's interest has been said to be merely "an ordinary money debt, secured by the contract." *Walker* v. *Casgrain*, 101 Mich. 604; 60 N. W. 291. See also *Bower* v. *Lansing*, 129 Mich. 117; 88 N. W. 384, and cases there cited. In the latter case

the Supreme Court of Michigan held that the vendor's interest in land held by the purchaser under a contract of purchase on the death of the vendor goes to his administrator as personalty, and is not subject to sale on execution against the heir. See also *Commissioner* v. *Hart*, 76 Fed. (2d) 864. Since the doctrine is general, no occasion arises, as respondent contends, to set it aside as a peculiarity of local law not binding in a Federal tax case by invoking the principle of *Burk-Waggoner Oil Association* v. *Hopkins*, 269 U. S. 110; and *Burnet* v. *Harmel*, 287 U. S. 103.

We think it clear, therefore, that petitioner in acquiring equitable title to and possession of the land by cancellation of the contracts got property essentially different in nature from what it had before as a mere assignee of the vendor's bare legal title. Petitioner would not, therefore, be governed by article 353 of the Treasury Regulations.

We come now to the essential question, whether petitioner's exchange of a secured chose in action for land resulted in a completed transaction by which gain or loss was realized. The original installment obligation under section 44 (d) of the Revenue Act of 1928, set out in the margin,[1] had been closed as respects the vendor when the Construction Co. sold the contracts to the petitioner. Gain or loss had then been realized by the vendor. The petitioner was not a seller under the installment plan, as contemplated by the statute and the regulations, but the purchaser of property of one kind which it was forced later on to exchange for property of another kind. The fact that it reported the collections on the contracts on the installment plan, treating only a proportionate part of them as income, does not alter the fundamental fact that it was not a seller of property on the installment plan " repossessing " itself at a later period of the same property sold.

We are of the opinion that the exchange by petitioner of its interest in the land contracts for the land itself constituted a transaction entirely separate from the vendor's original sale of the land and as such was the occasion of realizing gain or loss. In *Home State Bank*, 15 B. T. A. 121, we had occasion to consider a situation analogous to that here. In that case the petitioner sold real property in 1915 which it repossessed in 1920 because of default on the part of the purchaser in payment of promissory notes secured by mort-

---

[1] SEC. 44. (d) *Gain or loss upon disposition of installment obligations.*—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange—the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange—the fair market value of the obligation at the time of such distribution, transmission, or disposition. The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full.

gages given to the vendor-taxpayer. The petitioner had parted with legal title, but retained mortgages as security for the payment of the balance of the sale price. We treated the original sale and the re-possession as " two separate and distinct transactions " and held that a loss was actually sustained upon the repossession. Similarly, in *Henry Heldt*, 16 B. T. A. 1035, where the vendor had sold land for cash and mortgages and later repossessed himself of the land in exchange for the mortgages, we held that gain had been realized. See also *Nat Webb, Jr.*, 22 B. T. A. 1249.

In the *Home State Bank* case, *supra*, the petitioner was not report-ing income on the installment basis. In *Jacob M. Dickinson, Jr., et al., Executors*, 18 B. T. A. 790, however, the petitioner sold a cotton plantation, taking a mortgage for the unpaid purchase price, and later found it necessary to foreclose the mortgage, exchanging the purchaser's notes, equal in face value to the then fair market value of the land. The petitioner reported its income on the install-ment basis. We held that the petitioner by its reacquisition of the land realized a profit in the amount of the proportion of notes util-ized which the total profit bore to the total contract price. We there said:

The reacquisition, or repurchase of the plantation on December 18, 1923, was effected by an exchange of notes having a face value of $125,000 for the planta-tion which then had a fair market value of $125,000. The utilization of the purchase money notes in reacquiring the plantation constitutes a realization of profit, under the installment method of reporting income. The total contract price, when the plantation was sold, was $233,025; the profit was $167,637.67. The profit is 7.1398 per cent of the total contract price and under the install-ment method of returning income that part of each payment constitutes profit realized. It follows that 7.1398 per cent of $125,000, or $8,924.75, constitutes profit in 1923.

Our judgment in the *Dickinson* case was predicated on the fact that the original sale by the vendor was complete because title had passed.

If, as we have held in these cases, the surrender of legal title to the land by the vendor constitutes a proper criterion of separability of the original sale from the subsequent repossession and retransfer of title to the land, we think it logically follows that the substitu-tion of a second taxpayer for the original vendor clearly results in the separation of the original sale from the act of repossession, so that the latter act results in gain or loss to the second taxpayer. We have already indicated that what the petitioner here acquired by purchase of the vendor's interest in the contracts was substantially different from what the vendor had originally held, and that conse-quently petitioner by repossession of the land acquired something which he had never before held and essentially different from the chose in action which he held against the purchaser for the purchase

price. We are of the opinion, therefore, that petitioner realized a loss on acquiring the land covered by the contracts and that this loss should be measured by the difference between petitioner's unrecovered cost of the contracts and the fair market value of the real estate in 1931 when acquired by it. The unrecovered cost should be determined, as already suggested, in accordance with petitioner's method of computation, in order to give due effect to income reported by it in prior years on the installment basis.

The only question remaining is one of fact, namely, the fair market value of the 45 houses and lots in 1931 when acquired by the petitioner. We have determined that value to be $124,100, based on the testimony of a witness who was thoroughly familiar with each parcel of land and the condition and value of each one.

*Decision will be entered under Rule 50.*