Robert W. KELSEY, Appellant
(Defendant Below),

v.

Charles NAGY and Rose Ann Nagy,
Appellees (Plaintiffs Below).

No. 3–577A132.

Court of Appeals of Indiana,
Third District.

Sept. 29, 1980.

Rehearing Denied Nov. 19, 1980.

Andrew P. Rodovich, Hand, Muenich & Rodovich, Hammond, for appellants Charles Nagy and Rose Ann Nagy.

David W. Weigle, O'Connor & Weigle, Hammond, for appellee Robert W. Kelsey.

STATON, Judge.

Charles and Rose Ann Nagy filed a complaint against Robert W. Kelsey and several other defendants alleging a violation of IC 1971, 23–2–1–19(a)(2), Ind.Ann.Stat. § 25–873 (Burns Code Ed.) and common law fraud regarding the sale of certain stock. The trial court granted summary judgment for the defendants other than Kelsey and granted judgment on the evidence against Kelsey. The Nagys appeal from the summary judgment, and the Nagys and Kelsey appeal from the judgment on the evidence.

We affirm.

## I.

### Nagy's Appeal

The defendants other than Kelsey filed their motion for summary judgment on June 2, 1975. On November 5, 1975, the trial court granted the motion and entered judgment for those defendants.[1] The Nagys filed a motion to correct errors addressed to the summary judgment on December 30, 1975. The motion was denied on February 4, 1976.

■ Ind. Rules of Procedure, Appellate Rule 2(A) provides:

"An appeal is initiated by filing with the clerk of the trial court a praecipe designating what is to be included in the record of the proceedings, and that said praecipe shall be filed within thirty [30] days after the court's ruling on the Motion to Correct Errors or the right to appeal will be forfeited."

This rule is mandatory. *Sears, Roebuck & Co. v. Hutchens* (1973), 260 Ind. 561, 297 N.E.2d 807; *Spencer v. Miller* (1973), 156 Ind.App. 462, 297 N.E.2d 491.

1. "Court now grants Summary Judgment for all Defendants except Robert W. Kelsey, said judgment being that there is no genuine issue as to any material fact between the Plaintiffs and all the Defendants and that the law is with the Defendants.
"WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the Plaintiffs take nothing by their complaint and *judgment entered* for Defendants and against Plaintiffs. *Cost versue [sic] the Plaintiffs.*

"Court now denies Robert Kelsey's Motion for Summary Judgment.
"ALL OF WHICH IS ORDERED, ADJUDGED AND DECREED by the Court this 5th day of November, 1975.
"/s/ Bruce W. Douglas, Judge
Porter Superior Court"
As to costs *see Parrett v. Lebamoff* (1979), Ind.App., 383 N.E.2d 1107; *also see* A.R. 4(E).

■ The Nagys failed to file a praecipe within thirty days of the denial of their motion to correct errors. Assuming *arguendo* that the order and judgment in question were final and appealable,[2] the Nagys' failure to file a timely praecipe constituted a forfeiture of their right to appeal any alleged errors occurring therein.

The action between Kelsey and the Nagys proceeded to trial. On September 14, 1976, following the presentation of all the evidence, the trial court entered a judgment on the evidence for the Nagys against Kelsey on the violation of IC 23–2–1–19(a)(2). The Nagys filed a motion to correct errors addressed to that judgment on December 1, 1976, contending that the trial court erred in failing to submit the question of punitive damages, which had been raised in the count on common law fraud, to the jury.

■ In order to preserve error for appeal, the aggrieved party must file a motion to correct errors within sixty days of the entry of judgment. TR. 59(C); *P–M Gas & Wash Co., Inc. v. Smith* (1978), Ind., 375 N.E.2d 592. Because the Nagys failed to file a motion to correct errors within sixty days of the entry of the judgment on the evidence, they have failed to preserve the alleged errors in that judgment.

## II.

### Kelsey's Appeal

The Nagys alleged that Kelsey sold them stock in violation of IC 23–2–1–19(a)(2) which, at the time of the transaction, read in pertinent part as follows:

"Any person who

\* \* \* \* \* \*

"(2) offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), and who does not

sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at six per cent [6%] per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security and any income received on it, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at six per cent [6%] per year from the date of disposition."

■ Kelsey's first contention is that the Nagys waived their right to rescind the transaction. We agree with Kelsey that the right to rescind a transaction under IC 23–2–1–19 is subject to the principles of waiver. Once the Nagys learned of the facts which gave rise to their right to rescind, they promptly exercised that right by initiating this lawsuit. There was no waiver.

After both parties had presented their evidence, the trial court, pursuant to Ind. Rules of Procedure, Trial Rule 50, entered a judgment on the evidence against Kelsey. TR. 50(A) provides that "[w]here all or some of the issues in a case tried before a jury ... are not supported by sufficient evidence ... the court shall withdraw such issues from the jury and enter judgment thereon ...." Our Supreme Court has interpreted TR. 50 to mean that a judgment on the evidence may be entered *for* a party with the burden of proof only when there is no reasonable dispute as to the operative facts, and the evidence for that party is uncontradicted and unimpeached. *State ex rel. Peters v. Bedwell* (1978), Ind., 371 N.E.2d 709.

---

2. If the order and judgment were not final and appealable, it was incumbent upon the Nagys to preserve the alleged error in a timely motion to correct errors addressed to a subsequent entry of judgment. As indicated in the ensuing paragraph, the Nagys failed to do so.

Kelsey challenges the propriety of the entry of the judgment on the evidence.

The Nagys testified as to several misrepresentations allegedly made by Kelsey. Kelsey denied making most of the statements and argued that the statements he did make were not misrepresentations. However, IC 23–2–1–19(a)(2) does not lend itself only to misrepresentations. It also imposes liability for "any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . ."

The Nagys testified that Kelsey told them they were purchasing unissued or treasury shares of stock. The purpose of the sale, they were told, was to raise additional capital for expanding the business. When the Nagys asked Kelsey why, if the stock was such a bargain, he was not purchasing the available shares himself, Kelsey replied that, because of his affiliation with another corporation, it would produce a conflict of interests. Although Kelsey denied that he told the Nagys they were purchasing unissued or treasury shares, he did testify that he never informed the Nagys that they were purchasing his stock.

■ The source of the stock was a material fact, *i. e.*, one to which a reasonable investor would attach importance when deciding on his course of action. *Arnold v. Dirrim* (1979), Ind.App., 398 N.E.2d 426. The Nagys had the right to know whether the money they were paying for the stock was going into the treasury of the corporation so as to increase its working capital, or into Kelsey's pocket where it would have no such effect. Furthermore, it is likely that the disclosure of the true source of the stock would have prompted the Nagys to make further inquiries concerning the reasons for its availability and would have put the representations made by Kelsey in an entirely different perspective. Kelsey's failure to disclose his ownership of the stock constituted an "omission to state a material fact necessary in order to make the state-

ments made, in the light of the circumstances under which they [were] made, not misleading."

Kelsey then argues that there was evidence from which the jury could have inferred that the Nagys knew or, in the exercise of reasonable care and due diligence, could have known of the omission. We find nothing in the record to support Kelsey's contention that the Nagys had actual knowledge of the omitted fact, *i. e.*, that they were buying his stock.

■ Kelsey's contention that the Nagys, in the exercise of reasonable care and due diligence, could have learned of the omission is predicated on the proposition that they had an affirmative duty to make inquiries and discover the actual circumstances underlying the transaction. We reject that proposition.

Certainly if the legislature had intended to impose a duty of investigation upon the buyer, it would have expressly included such in the wording of the statute. The proscriptions of IC 23–2–1–19, however, embrace a fundamental purpose of substituting a policy of full disclosure for that of caveat emptor. That policy would not be served by imposing a duty of investigation upon the buyer.

■ Furthermore, there is a critical distinction between the language of the Security and Exchange Commission's Rule 10b–5[3] (the prototype of the various states' laws concerning securities regulation) and our statute. IC 23–2–1–19(a)(2) refers to "any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (*the buyer not knowing of the untruth or omission.*)" (Our emphasis.). Rule 10b–5 does not include the parenthetic qualification. We perceive the inclusion of that qualification as a clear expression of legislative intent: that an investigation by the buyer might have led to the discovery of the omission is not a defense to an action brought under IC 23–2–1–19(a)(2).

**3.** 17 CFR § 240.106–5.

■ Kelsey's next contention is that the Nagys failed to show that they acted in reliance on the omitted fact. Because the circumstances of this case involve the omission of a material fact, as opposed to a misrepresentation of a material fact, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the fact withheld be material in the sense that a reasonable investor might have considered it important in the making of his decision. *See, Arnold v. Dirrim, supra. Accord, Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).

■ Kelsey further argues that the judgment on the evidence was improper because the Nagys did not show that the failure to disclose the source of the stock affected the price of the stock. The Nagys, however, were not seeking damages; they were seeking a rescission of the purchase. It is not necessary that a party seeking to rescind a purchase establish that the facts misrepresented or omitted were such as to affect the price of the stock. It is sufficient if that party shows that the facts misrepresented or omitted were material. *Associated Lathing & Plaster Co. v. Louis C. Dunn, Inc.* (1955), 135 Cal.App.2d 40, 286 P.2d 825; *E. E. Atkinson & Co. v. Neisner Bros.* (1935), 193 Minn. 175, 258 N.W. 151, 259 N.W. 185; *Fawkes v. Knapp* (1917), 138 Minn. 384, 165 N.W. 236. As discussed earlier, the source of the stock was a material fact. The Nagys established that they were entitled to a rescission.

■ Kelsey also argues that the Nagys did not tender the stock in compliance with the statute. IC 23–2–1–19(a)(2) does require a buyer who is suing to recover the consideration paid for the stock to tender the stock and any income he has received from it. However, IC 23–2–1–19(c) provides that "[a]ny tender specified in this section may be made at any time before the entry of judgment." The record discloses that prior to the entry of the judgment on the evidence, the Nagys did tender the stock and the dividends they had received. The Nagys complied with the requirement of tender.

■ Kelsey's final contention is that the trial court erred in awarding attorneys' fees. Although the parties stipulated that the Nagys incurred reasonable attorneys' fees of $5,000, Kelsey argues that the award of attorneys' fees under IC 23–2–1–19 is discretionary and that the matter should have been submitted to the jury.

IC 23–2–1–19(a)(2) provides that an aggrieved buyer

"may sue either at law or in equity to recover the consideration paid for the security, together with interest at six per cent [6%] per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security and any income received on it, or for damages if he no longer owns the security. . . ."

We believe the intent of the legislature was to mandate an award of attorneys' fees, costs, and interest when the buyer prevailed on his suit to recover the consideration paid. *See Young v. Taylor*, 466 F.2d 1329 (10th Cir. 1972). The trial court did not err in awarding attorneys' fees.

The judgment of the trial court is affirmed.

HOFFMAN, J., concurs.

GARRARD, P. J., concurs with opinion.

GARRARD, Presiding Judge, concurring.

I concur with part II of the majority opinion concerning the judgment against Kelsey.

With respect to part I I agree that no issues have been preserved for appeal.

With respect to the summary judgment granted in favor of the other defendants, Indiana Rules of Procedure, Trial Rule 56(C) requires us to consider that order as interlocutory since the trial court made no written determination that there was no just reason for delay and that final judgment should be entered. This order was not then appealable. AP 4. In effect,

Nagy's motion to correct errors filed December 30, 1975 was a petition to reconsider. There had been no appealable order entered, and Nagys could not properly file their praecipe for an appeal within thirty (30) days after the ruling on this motion as required by AP 2. Nor did they attempt to.

They could have petitioned the court to make the order final, or they could have awaited entry of final judgment and then timely appealed by raising the matter in a (new) motion to correct errors. They did neither, and their attempted appeal of this question must fail.

With respect to the attempted cross appeal against Kelsey, I agree that under *P–M Gas & Wash Co., Inc. v. Smith* (1978), Ind., 375 N.E.2d 592 Nagys should have filed their motion to correct errors within sixty (60) days after the entry of final judgment since that case construed TR 59(D) as applying only to cases which involve claims concerning evidence which is outside the record.

The court in *P–M Gas & Wash*, however, declared that its ruling should have prospective application and should not defeat a party's right to appeal in cases already decided.

The rulings before us were made before the decision in *P–M Gas & Wash*. Therefore, Nagys' cross errors should be considered timely if their cross motion was in time under the construction that TR 59(D) afforded them fifteen (15) days within which to file after service of Kelsey's motion to correct errors. (See Court of Appeals decision in *P–M Gas & Wash*, 352 N.E.2d 91.)

Kelsey's motion was filed on November 12, 1976, and service by personal delivery was had that same day. November 27, 1976 was a Saturday so TR 6 extended the time for filing cross errors until Monday, November 29, 1976.

The motion, however, was not filed until November 30. (File stamped copies and order book entries show the cross assignment filed November 30, 1976 and, again, December 1, 1976.) This was too late.

I therefore agree that the purported cross appeal presents nothing for review.