## Harriet J. Comstock v. Joseph B. Comstock and others.

*Homestead: Bill in equity: Married woman.* It is no defense to a bill by a married woman to have a homestead right set off to her, that her husband at the time of the filing of the bill was providing her a comfortable home.

*Homestead: Married woman: Bill in equity: Preventive remedy.* Where the homestead right is absolutely denied, and its actual enjoyment seriously endangered by the foreclosure of what are claimed to be purchase-price mortgages, the bill filed by the wife cannot be said to be premature because no execution had been levied on the premises and no sale advertised under any decree; the right is one which, from its nature and incidents, may well appeal to preventive remedies.

*Homestead: Husband and wife: Mortgages: Foreclosure: Redemption.* Where it appears that the defendants to such a bill are seeking to foreclose a mortgage on the premises claimed as a homestead, which is signed by the husband alone, by suits to which the wife is not made a party, on the ground that it is a purchase-price mortgage, it is no defense to the relief sought, that the husband is still entitled to redeem from the foreclosure, and is not alleged to be unable to do so, and that no fraud is alleged.

27 MICH.—13.

*Married woman: Homestead.* The right of a married woman to sue in such cases is by the statute (*Comp. L. 1871*, § *4805*) placed upon the same basis as her right to prosecute in relation to her sole property.

*Heard April 11.    Decided April 22.*

Appeal in Chancery from St. Clair Circuit.

*John Atkinson* and *A. E. Chadwick*, for complainant.

*Cyrus Miles* and *R. P. Eldredge*, for defendants.

GRAVES, J.

The complainant, who is the wife of Alfred Comstock, filed the bill in this cause to secure a homestead right. The bill was dismissed by the circuit court in chancery, and the complainant has brought her case here by appeal. Her claim is contested only by the defendants, Joseph B. and Abiathar W. Comstock.

The lands, as set forth in the bill, in which a homestead exemption is sought, are the northwest quarter of section twenty, the east half of the southwest quarter, the east half of the northwest quarter, and the west half of the southwest quarter, of section seventeen, in township eight north, in the county of St. Clair. The main facts requisite to show that complainant and her husband had an actual homestead on this land are alleged, and no question is made on that subject, and it appears to have been located on the north-west quarter of section twenty. The bill then represents that the husband, after this actual establishment of the homestead, mortgaged the premises to the defendants, Joseph and Abiathar, but not for purchase money; that she did not join in either mortgage, and that she has been informed these mortgages have been foreclosed, though she was not made a party to any foreclosure proceedings. She also alleges that the defendant Joseph has deeded "said lands" to Cyrus Miles and O'Brien J. Atkinson, and that they "assert some kind of title thereto under such deed." She then avers her claim to a specified forty acres

on the north-west quarter of section twenty, embracing the house and out-buildings, and asks that the designated parcel may be set apart as her homestead.

The answer is understood as asserting, that prior to March 1st, 1765, the complainant's husband only owned an undivided one-half, which he purchased of Joseph and Abiathar, and mortgaged back for the purchase money; and that all right to that interest has been cut off by foreclosure of such purchase-money mortgage; and that about March 1st, 1865, the defendant Joseph sold to complainant's husband the other undivided half of said lands, with other premises, and received back a purchase-money mortgage covering the interest sold, and which mortgage is now in process of foreclosure in chancery; and that Alfred, the husband, has no interest whatever, except the right to redeem this last named undivided half by paying nearly five thousand dollars before the completion of the foreclosure. The answer admits that complainant was not a party to the mortgages, and that she was not joined in the suits to foreclose; and it also expressly denies that she has any homestead right whatever in the premises.

The record is somewhat vague and confused, and we think it would be unprofitable to make extended citations from it, or include in our opinion much more than the results to which our examination has led.

After a careful investigation of the facts presented, in their different bearings, we are unable to reconcile with the evidence or with probability, the statement of defendants, that the mortgages mentioned in the pleadings were given for purchase money of these premises. There is no such correspondence in dates and in other particulars as, according to the natural and common course in such matters, would be looked for in case of mortgages given, or meant to be given, back for purchase money; and, on the other hand, there are several circumstances which strongly countenance the idea that they were not such securities. This opinion is somewhat fortified by the failure

of the defendants to give clear and harmonious explanations.

The evidence relating to the state of the title is not so full, connected and explicit as we should desire. ·But, looking at the proofs as they lie before us, with such explanations as may be found scattered through the record, we are led to conclude that on the 7th of December, 1852, Lorenzo M. Mason, who seems then to have owned this interest, conveyed to Alfred Comstock, the husband, an undivided three-fourths of the north-west quarter of section twenty, and of the east half of the south-west quarter of section seventeen, of the tract mentioned in the bill, and that on the 16th of February, 1865, Joseph B. Comstock, who was then, as he claims and as the record indicates, the owner of that interest, conveyed the remaining undivided one-fourth of said parcels to said Alfred. The title to the whole interest in these parcels, then, would seem to have been passed by these conveyances to complainant's husband. And it is admitted, or at least claimed and proved on the part of complainant, and not disputed by defendants, that during the whole period from a date prior to the conveyance by Mason in 1852 to the time of filing the bill, the complainant and her husband have lived and made their home in the dwelling house on said northwest quarter of section twenty, and where the bill asks to have the homestead set apart.

The defendants do not pretend, and we find no evidence or indication that the complainant has, since the conveyance by Mason to her husband in 1852, in any way joined in or consented to any alienation of or charge upon these parcels or either of them. On the contrary, she avers that she has done nothing of the kind.

On the argument the first objection raised by defendants was, that it appeared from the case that when complainant filed her bill her husband, Alfred Comstock, was providing her a comfortable home. Admitting this to be so, we do not see that it affords any answer whatever to her demands.

She does not complain that her husband has not, and may not hereafter furnish a home for her. She alleges a right of her own in *the* existing home, which she can maintain against invasion. She insists that as against the defendants she has a fixed homestead right where she is, and that they have put forth a claim to deprive her of it, and are moving to deprive her of it.

Now, the law, where the circumstances meet its requirements, gives an absolute right to the homestead, and in doing so it has a deeper meaning than a mere purpose to secure a present shelter for the husband and wife. It looks to the needs of the social state as connected with the public welfare, and aims to promote and secure the integrity and unity of those little commonwealths known as families; and not merely for the benefit of the members considered as individuals, but with a view to the general good which is felt to be measurably bound up with the wellbeing of these domestic establishments.

The law, then, ought to be construed and administered, as far as may be, according to its principle, design and policy. The whole spirit of it indicates that protection to the homestead ought to continue and be subject to be invoked by the wife whenever circumstances menace an invasion of the right, and we cannot regard the fact that the husband at the time of complaint is supplying a home, as a pertinent reply where the case shows that the right itself is absolutely denied and its actual enjoyment seriously endangered. Neither can we accept any view which would require the wife to postpone applying for legal protection until actually turned out and altogether deprived of the benefit of the homestead. The right, from its own nature and incidents, is one which, according to principle and all analogies, may well appeal to preventive remedies.

The next objections are, that when the bill was filed no execution had been levied on the premises, and no sale even advertised under any decree; that complainant's husband was still entitled to redeem, as against the foreclosure, and

is not alleged to be unable to do so, and that no fraud is·
alleged to have been committed in relation to the mort-
gage transactions.

Besides what has been said already, only a few words
are needed on these objections. The case shows that the
defendants not only deny the complainant's right to the
homestead, but are prosecuting behind her back upon a
basis which would exclude her right. They say that
she has no right, and then avow that her husband
has no interest except what he holds subject to a pur-
chase-money mortgage, which is in course of foreclos-
ure, and which, if duly established and foreclosed as a
purchase-money mortgage, will exclude all homestead right
as against her husband, and expose the complainant to be
expelled from the possession. Now, one of the material
matters in dispute is, whether the mortgages referred to are
purchase-money mortgages; whether they *are* mortgages
which may be made *to cut off* a homestead right. The
complainant can try that question in this case; but she
cannot in the foreclosure suit, because she is not a party
to that suit.· She maintains that the mortgages were not
purchase-money securities, and we have already stated our
agreement with her position on this point.

These circumstances and this attitude of the parties, it
seems to us, are sufficient to justify the complainant in pro-
ceeding. She was not required to wait until dispossessed, or
at least threatened with dispossession, by process after fore-
closure. On the contrary, it was extremely proper for her
to act promptly if she intended to act at all, and she might
have been exposed to hurtful incidents, if she had waited
until third parties had become entangled as bidders, or
otherwise.

It is very possible that she might have insisted by
petition on being made a party in the foreclosure suit, but
if she might, she was not bound to adopt that course. She
was at liberty, on being left out, to elect her separate
remedy. If any doubt of her ability to institute and carry

on legal proceedings for the vindication and protection of the homestead could have been entertained in the absence of legislation directed to that subject, there can be no question now. The third section of the act of 1855 (*Comp. L. 1871, § 4805*), has placed the right of the married woman to sue in such cases upon a level with her right to prosecute in relation to her sole property.

Upon the whole, then, we reach the conclusion that the complainant has made out a case for relief, and we think she is entitled to have a homestead set apart to her as against the mortgages and alienations set up by the defendants, and which they claim to be repugnant to, or inconsistent with her right.

The decree below must be reversed and one entered in this court declaring the complainant entitled to her homestead on the northwest quarter of section twenty, before mentioned, as against the rights and interests given by the mortgages and alienations set up in opposition to her claim; and it must be referred to a circuit court commissioner of St. Clair county to cause such homestead, not exceeding one thousand five hundred dollars in value and forty acres in quantity, to be surveyed and set apart in the manner provided by the statute.—*Comp. L. 1871, § 6140.* The cause must be remanded to the circuit court for the county of St. Clair in chancery for the execution of the decree, and the costs of complainant in this court and in the court below, and including the costs and expense attending the survey and setting apart the homestead, must be borne by the defendants, Joseph B. and Abiathar W. Comstock.

The other Justices concurred.