JOHN HEFFRON AND EDWARD REIDY, EX'RS, V. SARAH
FLANIGAN, THE NATIONAL FIRE INS. CO.
OF HARTFORD, ET AL.

*Priority of Mortgage.*

Title does not vest till delivery of the deed.

The fiction of relation must not be applied to the injury of
innocent parties.

Delivery of a deed is notice to third parties that until then the
grantee has had no such interest in the premises as would
enable him to encumber the title to their prejudice.

As a rule, if the grantor of lands on taking back a purchase
money mortgage has both conveyances promptly recorded,
he does all the law requires of him to protect his rights and
will not be affected by any previous conveyances which, with-
out his knowledge, his grantee, the mortgagor, may have
placed on record before obtaining title.

A grantee gave back a purchase money mortgage before delivery
of the deed. Afterwards, at the time the deed was actually
delivered, this grantee mortgaged the premises to a third
party in whose presence the delivery was made, and who had
no notice of the former mortgage. *Held,* that the delivery
of the deed in the latter's presence was notice to him that
until then the mortgagor had no title to encumber to his
prejudice. The second mortgage was accordingly given prece-
dence of the first.

Appeal from the Superior Court of Detroit. Submitted
June 8. Decided October 9.

BILL OF FORECLOSURE. The facts are in the opinion.

*Atkinson & Atkinson* for complainants. The first mort-
gagees are not estopped from asserting priority unless they
intentionally deceived the second into taking what he sup-
posed to be a first mortgage. *Com. v. Moltz,* 10 Penn. St.,
527; *Copeland v. Copeland,* 28 Me., 525; *Graves v. Key,*
3 B. & Ad., 313; *Heane v. Rogers,* 9 B. & C., 577; *Cam-
bridge Savings Bank v. Littlefield,* 6 Cush., 210; *Howard v.
Hudson,* 2 El. & B., 1; *Patterson v. Lytle,* 11 Penn. St.,

53; *Calhoun v. Richardson*, 30 Conn., 210; *Doe v. Groves*, 10 Q. B., 486; *Welland Canal v. Hathaway*, 8 Wend., 480; *Dezell v. Odell*, 3 Hill, 215; *Boggs v. Merced, etc. Co.*, 14 Cal., 366; Bigelow on Estoppel, 480. The doctrine of estoppel *in pais* should not be applied against persons acting as representatives, unless the equity on which it is founded should be enforced against the real party in interest. *Gilkey v. Hamilton*, 22 Mich., 283. When the condition of a deed delivered in escrow is performed, the deed relates back to the time of its delivery. *Stout v. Keyes*, 2 Doug. (Mich.), 187.

*G. V. N. Lothrop*, for the National Fire Ins. Co., defendant, cited as to the doctrine of equitable estoppel, *Cook v. Finkler*, 9 Mich., 131; *Blanchard v. Tyler*, 12 Mich., 339; *Truesdail v. Ward*, 24 Mich., 117; *Powell v. Smith*, 30 Mich., 451. Administrators and executors are bound by the same rules, and what estops one of several representatives estops all. *Camp v. Moseley*, 2 Fla., 197; Bigelow on Estoppel, 484. No one need examine the records for conveyances made by his grantor before the latter acquired title. *Farmer's L. & T. Co. v. Maltby*, 8 Paige, 361.

MARSTON, J. A bill in chancery was filed to foreclose a mortgage given by defendants Sarah Flanigan and Patrick Flanigan to complainants, executors of the estate of Jeremiah Scanlon, deceased. The National Fire Insurance Company was made a party defendant as a subsequent encumbrancer, and the entire controversy in this case grows out of this last allegation.

John Heffron and Edward Reidy as executors and by virtue of a power of sale contained in the last will and testament of Jeremiah Scanlon, deceased, sold at public auction the title and interest of said deceased in and to certain real estate in the city of Detroit. Sarah Flanigan became the purchaser thereof at such sale, and on the 16th day of August, 1873, Heffron and Reidy, as such executors, executed a deed of the premises to Mrs. Flanigan, she at the same time mortgaging the premises to them to secure a part of the purchase price. The property was sold for twenty-three

thousand dollars, one-third to be paid in cash and the balance in three equal annual payments, secured by mortgage upon the property.     Mrs. Flanigan, in order to make the cash payment, was obliged to negotiate certain securities she claimed to hold, or borrow seven thousand dollars, and she made application to William B. Wesson as agent of the insurance company to loan her that amount, payment thereof to be secured by mortgage upon this property.     On the 19th day of August she paid Mr. Reidy one thousand dollars, at which time it is claimed by complainants the deed from the executors to her was delivered, and then by Mrs. Flanigan handed back to Mr. Reidy for safe keeping until they should meet the next day at Mr. Wesson's office, and he, Reidy, receive the balance of the first payment.     The mortgage from Mrs. Flanigan to the executors seems also to have been delivered to or left in the custody of Mr. Reidy and was by him duly recorded in the office of the register of deeds on the 19th day of August.

The following day, August 20, Mr. Reidy and Mrs. Flanigan met according to appointment at the office of Mr. Wesson, when a mortgage was executed by Mrs. Flanigan to the National Fire Insurance Company to secure the payment of seven thousand dollars.     Mr. Reidy was one of the subscribing witnesses to this mortgage, but says he supposed it related to the negotiation of certain securities which Mrs. Flanigan claimed to hold against the Michigan Southern Railroad Company for property sold the company in Cleveland.     Mr. Wesson then paid over to Mr. Reidy at Mrs. Flanigan's request the seven thousand dollars by an eastern draft upon the insurance company, and Mr. Reidy handed to Mrs. Flanigan the executors' deed.     These several acts occurred at Mr. Wesson's office at the same time and were parts of one entire transaction.     The executors' deed to Mrs. Flanigan and the mortgage from her to the insurance company, were then sent by Mr. Wesson to the register's office and duly recorded.     It is not claimed that either Mr. Wesson or the insurance company had any notice, other than such as the record would afford, of the mortgage from Mrs. Flanigan to the executors, at the time the seven thou-

sand dollars was loaned and the mortgage taken by the insurance company. We are fully satisfied from the evidence that the deed from the executors to Mrs. Flanigan was not delivered until the seven thousand dollars was paid to Mr. Reidy in Mr. Wesson's office on August 20th, and the probabilities all point the same way. While Mr. Reidy may, on the 19th, have had every assurance that Mrs. Flanigan would be able to procure and pay over to him on the next day the unpaid balance of the first payment, yet he must have known that a delivery of the deed before this balance was actually paid, would leave him very much at the mercy of Mrs. Flanigan, and his previous acquaintance with her was scarcely sufficient, we think, to make it at all probable that he would be willing to run such a risk, when by retaining the deed until the amount was paid he could render himself secure. Such in all probability would be the course adopted by careful, prudent business men under similar circumstances, and we have no doubt but that such was the fact in this case.

Until the delivery of the deed to Mrs. Flanigan she had no title to the property. She was but a mere stranger to it, and although for certain purposes the delivery might relate back to the sale and vest the title in her as of that date, yet this fiction cannot be so applied as to work an injury to innocent parties.

Had Mr. Wesson made an examination of the records in the office of the register of deeds upon the 20th day of August, with the knowledge that the deed to Mrs. Flanigan had on that day just been delivered, he would not have searched for conveyances or incumbrances made by her previous to that date. At such a time his object would have been to ascertain whether her grantors had a good title or right to convey, and whether they had in any way encumbered their title. He would examine the records for the purpose of ascertaining whether any one, through whom the title was derived, had, after acquiring their title, conveyed or encumbered the same, but he would be under no obligation to examine the records in order to ascertain whether strangers to the title had without right or power attempted to alien

or encumber it.    The delivery of the deed in his presence to the grantee not only vested the title in her at that time, but it was a clear and direct notice to him that up to the time of such delivery she had no such interest or title in the premises therein described as would enable her to encumber the same to his prejudice.  This case differs in no essential from that of an ordinary conveyance of land with a mortgage back at the same time to secure a part or the whole of the purchase price or for other purposes.    The grantor and mortgagee in such a case would not suppose, nor would he have any right to suppose, that his grantee had before acquiring the title encumbered it, and if he took back a mortgage at the same time and had both conveyances promptly placed upon record together, he would be doing all that the law required him to do for the protection of his rights and he would not be affected by any previous conveyances which his grantee, the mortgagor, might have placed upon record, when he had no title to the premises. *Farmers' L. & T. Co. v. Maltby*, 8 Paige, 361; *State v. Bradish*, 14 Mass., 296.   As between the parties such previous conveyances might be good and valid.  To this general rule there may be exceptions, where parties have been in possession of premises under an equitable title.    Whether such exceptions could in any case arise we need not now discuss. It is sufficient to say that none such could exist in this case. We are of opinion that the mortgage to the insurance company must be considered as prior and entitled to preference over the one given to the executors, and that the decree below must be affirmed with costs.

The other Justices concurred.