**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED APRIL 14, 2004**

EILEEN V. GRAVES,

    Plaintiff-Appellant,

v                                    No. 119977

AMERICAN ACCEPTANCE MORTGAGE CORPORATION,

    Defendant-Appellee,

and

BOULDER ESCROW, INC., a Nevada Corporation,

    Defendant/Counter and Cross-Plaintiff-Appellee.

and

STEVE DIAZ,

    Defendant/Counter and Cross-Defendant.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

ON REHEARING

The issue before the Court is whether a mortgage given on a loan and secured by the mortgagor's property, the proceeds of which are used by the mortgagor to pay off a

land contract debt and thereby acquire legal title to that property, is a purchase money mortgage and, if so, whether it is therefore entitled to priority over a prior recorded lien on that property. The Court of Appeals held in the affirmative. We hold that the mortgage at issue is not a purchase money mortgage and, thus, we reverse the judgment of the Court of Appeals and reinstate the circuit court's grant of summary disposition in favor of plaintiff. Because we hold that the mortgage is not a purchase money mortgage, we need not address the additional question regarding the priority of purchase money mortgages.[1]

I. FACTS AND PROCEDURAL HISTORY

In 1987, a married couple, Eileen Graves and Steve Diaz, purchased by land contract a residence at 72 West End in Waterford (the property) from the Giordanos, the vendors under the land contract. Neither Graves nor Diaz recorded the land contract. In 1994, the couple divorced and, pursuant to the judgment of divorce, Diaz was awarded their interest in the property, but Graves was granted a lien on the property to secure payment of child support and other monies. In August of 1994, Diaz, facing forfeiture of the

_____

[1] We do not deal with the priority of purchase money mortgages because the issue is not implicated in this case. Thus, the concurrence should not be understood as the position of this Court.

2

property, applied for a loan from defendant American Acceptance Mortgage Corporation (American Acceptance) with the intent of using the proceeds to pay off the remaining debt on the property owed to the Giordanos and thereby avoid forfeiture. Before the mortgage closing, American Acceptance conducted a title search of the property in the Oakland County Register of Deeds in both the grantor-grantee index and the tract index. The search reflected that the property was owned by the Giordanos, and, because the land contract was never recorded, the records showed no interest by either Diaz or Graves. On the morning of September 7, 1994, Graves recorded her judgment lien interest in the property with the Oakland County Register of Deeds. Later that same day, Diaz closed on his loan with American Acceptance. In connection therewith, Diaz executed a mortgage note to American Acceptance secured by the property. The loan proceeds were used to pay the remaining balance under the land contract with the Giordanos, who delivered a warranty deed to Diaz on September 13, 1994, thereby conveying to Diaz legal title to the property. Diaz recorded his warranty deed on October 6, 1994. American Acceptance recorded the mortgage on October 5, 1994. Before recording the mortgage, however, American Acceptance assigned its interest to Boulder Escrow, Inc. (Boulder), and Boulder recorded that

3

assignment on April 13, 1995.

Because Diaz failed to pay Graves the monies due her, Graves filed a motion to enforce her judgment lien, which the trial court granted in November of 1995. On January 11, 1996, because Diaz had also defaulted on his mortgage obligations, Boulder published a notice of a public auction of the property. On January 12, 1996, Graves, asserting a failure to perform as required under the divorce judgment, sued Diaz, American Acceptance, and Boulder to foreclose on her judgment lien. Boulder filed a cross-claim against Diaz for defaulting on his mortgage obligation and a counterclaim against Graves asserting the priority of its mortgage interest over her judgment lien. In April of 1997, a default judgment was entered against Diaz, who is not a party to this appeal.

Plaintiff Graves and defendants American Acceptance and Boulder moved for summary disposition on the issue of the priority of the mortgage. The circuit court ruled for Graves, holding that plaintiff's first-recorded lien was constructively, if not actually, known to defendants and, thus, under MCL 565.29, the lien had priority over the subsequent mortgage.

The Court of Appeals reversed that ruling, holding that under the authority of *Fecteau v Fries,* 253 Mich 51; 234 NW 113 (1931), the mortgage was a purchase money

4

mortgage and was therefore entitled to priority over all other liens or interests, even those that were prior recorded.[2]

Graves sought leave to appeal in this Court. In lieu of granting leave, we initially issued an opinion per curiam in which we reversed the judgment of the Court of Appeals, holding that pursuant to Michigan's recording statutes, a property lien that is recorded first in time is entitled to priority without regard to a subsequent competing purchase money mortgage interest. 467 Mich 308; 652 NW2d 221 (2002). However, on reconsideration, we vacated that opinion per curiam and granted leave to appeal. 467 Mich 1231 (2003).

## II. STANDARD OF REVIEW

This appeal involves consideration of a trial court's ruling on a motion for summary disposition, which is reviewed de novo on appeal. *Spiek v Dep't of Transportation,* 456 Mich 331, 337; 572 NW2d 201 (1998). Further, the specific question we review—whether a mortgage, the proceeds of which were used to pay the remaining debt on a land contract, constitutes a purchase money mortgage entitled to priority over a prior recorded

---

[2] 246 Mich App 1; 630 NW2d 383 (2001).

lien—presents an issue of law that is also reviewed de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n,* 437 Mich 75, 80; 467 NW2d 21 (1991).

### III. ANALYSIS

Black's Law Dictionary (6th ed) defines a "purchase money mortgage" as "[a] mortgage or security device taken back to secure the performance of an obligation incurred in the purchase of the property." This definition comports with the implicit definition that this Court has given to purchase money mortgages in relevant cases, including *Fecteau.* In *Fecteau* at 55*,* we noted that a purchase money mortgage takes effect immediately, as part of the "same transaction by which seisin was acquired by the mortgagor."[3] Further, in *Fecteau* at 54, we regarded a purchase money mortgage as one arising when a mortgagor "purchase[s] property and give[s] a mortgage for the purchase-money . . . ."[4]

---

[3] Black's defines "seisin" as "Possession of real property under claim of freehold estate. . . . Possession with an intent on the part of him who holds it to claim a freehold estate."

[4] In *Comstock v Comstock,* 27 Mich 97, 99 (1873), we addressed whether the mortgages at issue were purchase money mortgages, questioning whether the "mortgages mentioned in the pleadings were given for the purchase money of these premises . . . [whether they were] given, or meant to be given, back for purchase money . . . ." See also *Hammel v First Nat'l Bank of Hancock,* 129 Mich 176, 177-178, 88 NW 397 (1901), quoting *United States v New Orleans R,* 79 US (12 Wall) 362; 20 L Ed 434 (1870), in

6

Thus, determining whether a mortgage is a purchase money mortgage requires considering whether the obligations incurred under the mortgage arose as part of the same transaction in which the mortgagor purchased the property securing the mortgage.  The mortgage must have been given at the time of purchase of the security so as to constitute "one transaction," and the proceeds must have been used by the mortgagor to purchase the security, in whole or in part.

American Acceptance argues that the mortgage received from Diaz is a purchase money mortgage because it was created as part of the "same transaction" under which legal title was conveyed from the Giordanos to Diaz, and because the mortgage proceeds were used by Diaz to acquire that legal title from the Giordanos.  We respectfully disagree that these facts give rise to a purchase money mortgage.

This Court has consistently held that under a land contract, although the vendor retains legal title until the contractual obligations have been fulfilled, the vendee is given equitable title, and that equitable title is a present interest in realty that may be sold, devised, or encumbered.  In B*owen v Lansing,* 129 Mich 117, 119-122; 88

---

which we considered a "mortgage for purchase money" as one that arises when a mortgagor "purchase[s] property and give[s] a mortgage for the purchase money . . . as one transaction."

7

NW 384 (1901), this Court considered, at length, the rights incident to legal ownership and equitable ownership of land in a land contract situation.  We stated:

> "At law a contract for the purchase of land gives the vendee no interest in the land; but the rule is otherwise in equity, which considers the vendor, as to the land, a trustee for the purchaser, and the vendee, as to the money, a trustee for the seller. In equity the land belongs to the vendee, and may be sold, devised, or incumbered by him, and on his death will descend to his heirs. *Seton* v. *Slade*, 7 Ves. 265, 274 [1802]; *Paine* v. *Meller*, 6 Ves. [349] 353 [1801]; *Champion* v. *Brown,* [2 NY Ch Ann 163] 6 Johns. Ch. 398 (10 Am. Dec. 343) [1822]. . . . " [Quoting *Wing v McDowell,* Walker's Cham Rep (Mich) 175, 181 (1843).]

> This was emphasized by *Fitzhugh* v. *Maxwell,* 34 Mich. 138 [1876], where it was again said that the legal title remained in the vendor as a trust, *and that his only equitable claim upon it was by way of security for his debt in the nature of a vendor's lien,* which could only be made effective to devest the vendee's equitable title by a sale through proceedings to foreclose the vendor's lien.  In *Walker* v. *Casgrain,* 101 Mich. [604] 608, (60 N. W. 292) [1894], it was said: "While complainant holds the legal title, defendant . . . is the owner in equity. *The claim of the vendor is but an ordinary money debt, secured by the contract."* See also, *Corey* v. *Smalley,* 106 Mich 257, 260 (64 N. W. 13, 58 Am. St. Rep. 474) [1895]; *O'Brian* v. *Evans,* 107 Mich. 623 (65 N. W. 571)[1895].

> * * *

> As the foregoing authorities indicate that the vendor's title is only a trust coupled with an interest by way of security for a debt, which is personalty, so the [cases cited by counsel are] in harmony in holding that the vendee is the *cestui que trust* as to the legal title, and that his interest [i.e., the vendee's interest] is

8

real property, and descends to his heirs . . . .

It is clear that, upon the death of the vendor, the chose in action, with the security represented by the contract, became a part of the personal assets of the estate . . . . [*Bowen* at 119-120 (emphasis added).]

We acknowledge that in *Bowen* we did not address the specific question at issue in this case. Nonetheless, we believe the general rules of law stressed in *Bowen* are pertinent here and support a finding that a mortgage, the proceeds of which are used to pay off a land contract, is not a purchase money mortgage. The reason such a mortgage is not a purchase money mortgage is because in a land contract situation the vendee "purchases" the property upon signing the land contract and acquiring an equitable interest therein.[5] At that point, the vendee acquires "seisin" and a present interest in the property that may be sold, devised, or encumbered. That the vendee may ultimately default on the contract does not negate the fact that the vendee has, in a real sense, purchased the relevant property. That legal title remains in the vendor until full performance of all contractual obligations

---

[5] Black's defines "purchase" as "To own by paying or promising to pay an agreed upon price which is enforceable at law . . . . The term 'purchase' includes any contract to purchase or otherwise acquire." This definition supports our finding that, upon signing a contract to purchase property and acquiring equitable title therein, the vendee has purchased that property.

likewise does not negate the fact that the vendee has already purchased the property. The vendor's legal title, as noted in *Bowen,* "is only a trust coupled with an interest by way of security for a debt . . . ."[6] *Bowen* at 120. It represents "but an ordinary money debt, secured by the contract." *Casgrain* at 260.

Because Diaz already owned the property at the time American Acceptance loaned him money in return for a mortgage with which to pay off the land contract, the mortgage here is not a purchase money mortgage. The obligations incurred under the mortgage were not for the purpose of purchasing the property. On the contrary, they were for the purpose of discharging a debt, and it was the obligations under this original debt that arose as part of the same transaction in which the property was purchased.

---

[6] MCL 565.357(2) of the recently enacted land contract mortgage act, MCL 565.356 *et seq.,* provides that land contracts can be mortgaged and that the interests of both the vendor and the vendee subject to a land contract mortgage are real property interests. Thus, the vendor's interest when subject to a land contract mortgage is an interest in realty. Therefore, the vendor's interest under the land contract itself is more appropriately considered an interest in realty as opposed to personalty. However, the vendee's interest, when subject to a land contract mortgage, is equally an interest in realty. Therefore, the vendee's interest under the land contract itself is likewise appropriately considered an interest in realty (as under *Bowen*). Thus, the land contract mortgage act further supports a finding that the equitable title conveyed to a vendee under a land contract evidences an interest in realty that may be encumbered, sold, or devised.

10

Accordingly, American Acceptance's mortgage is not a purchase money mortgage and, therefore, we need not address the additional question regarding the priority of purchase money mortgages.[7]

---

[7] We further note that a close analysis of cases in which this Court has afforded priority to purchase money mortgages supports our holding that the instant mortgage is not a purchase money mortgage. For instance, in *Heffron v Flanigan,* 37 Mich 274 (1877), we considered the nature of a mortgage given at the same time that title was acquired as opposed to a prior mortgage given on the same property before the mortgagor had acquired title to it. We stated:

> This case differs in no essential from that of an ordinary conveyance of land with a mortgage back at the same time to secure a part or the whole of the purchase price or for other purposes. *The grantor and mortgagee in such a case would not suppose, nor would he have any right to suppose, that his grantee had before acquiring the title encumbered it*, and if he took back a mortgage at the same time and had both conveyances promptly placed upon record together, he would be doing all that the law required him to do for the protection of his rights and he would not be affected by any previous conveyances which his grantee, the mortgagor, might have placed upon record, *when he had no title to the premises.* [*Id.* at 278 (emphasis added).]

In this case, American Acceptance acquired its mortgage long after Diaz had acquired equitable title to the property and, therefore, American Acceptance had reason to know that Diaz may have encumbered the property. Further, Diaz held title to the property at the time that Graves placed her mortgage on it. Thus, *Heffron,* which is clearly distinguishable from the instant case, leads to the conclusion that a mortgage granted on property *after* the mortgagor already has acquired title to the property entitling the mortgagor to encumber the property is not a purchase money mortgage.

11

## IV. CONCLUSION

We hold that a mortgage, the proceeds of which are used to pay off a land contract debt, is not a purchase money mortgage. Therefore, we reverse the judgment of the Court of Appeals and reinstate the circuit court's grant of summary disposition in favor of plaintiff. Because defendants' mortgage is not a purchase money mortgage, we need not address the additional question regarding the priority of such mortgages.

Stephen J. Markman
Maura D. Corrigan
Michael F. Cavanagh
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

EILEEN V. GRAVES,

    Plaintiff-Appellant,

v                                 No. 119977

AMERICAN ACCEPTANCE MORTGAGE CORPORATION,

    Defendant-Appellee,

and

BOULDER ESCROW, INC., a Nevada Corporation,

    Defendant/Counter and Cross-Plaintiff-Appellee.

and

STEVE DIAZ,

    Defendant/Counter and Cross-Defendant.

_____

WEAVER, J. *(concurring)*.

I concur with the majority, but write separately to make clear that, at this time, the purchase money mortgage doctrine remains a part of Michigan jurisprudence.[8] This point must be emphasized to provide clarity and stability in the law because the current state of the law has been

_____

[8] My concurrence is based on the unremarkable proposition that a vacated opinion has no effect or precedential value. It is uncertain whether the majority disagrees with that principle, disagrees with the application of that principle to this case, or simply does not want that principle and its application to be clearly set out in this case.

questioned following this Court's decision to vacate its opinion per curiam in this matter.

In this case, this Court should not have overturned the purchase money mortgage doctrine in an opinion per curiam, without granting leave to appeal and having oral argument. Had we granted leave to appeal and heard oral argument, we doubtless would have discovered that the purchase money mortgage doctrine was not at issue in this case (as we discovered when we vacated our prior opinion per curiam, granted leave to appeal, and heard oral argument). That would have prevented the current situation, where the Court's actions have caused confusion and instability in the law where there was none.

To date two cases have referenced the uncertainty in the law after this Court's earlier actions—an unpublished opinion per curiam from the Court of Appeals, *DeGregorio v C & C Construction,* Docket No. 238429, decided May 20, 2003, and a case in the Eastern District of Michigan, *Bednarowski v Wallace,* 293 F Supp 2d 728 (ED Mich, 2003). See also Michigan Land Title Association newsletter, Dick, *Abstractions,* The Title Examiner, (Winter 2002) ("And, as if we needed more confusion, the Michigan Supreme Court reversed the *Graves* decision and, in the process, dismantled the priority of purchase money mortgages over

2

prior existing liens; (thank you, very much!) . . . .").

While it may be obvious to some, it is important to clearly state that because this Court has vacated its prior opinion per curiam, its overturning of the purchase money mortgage doctrine in that vacated opinion has no effect or precedential value. Consequently, the purchase money mortgage doctrine remains intact in Michigan jurisprudence.

By issuing this concurrence, I am indicating no inclination one way or another concerning the continuation or abandonment of the purchase money mortgage doctrine. Should the issue be raised in an application for leave to appeal in the future, I will decide then whether or not to take the issue up for consideration and decision.

Elizabeth A. Weaver