**UNITED STATES of America, Plaintiff,**

v.

**Gerald Eugene SINGER, Defendant.**

**Case No. 1:11–CR–257.**

United States District Court, W.D. Michigan, Southern Division.

March 19, 2013.

Christopher M. O'Connor, Joel S. Fauson, Michael A. MacDonald, U.S. Attorney, Grand Rapids, MI, for Plaintiff.

Michael Robert Bartish, Springstead & Bartish Law PLLC, Grand Rapids, MI, for Defendant.

## *MEMORANDUM ORDER REGARDING COUNT 8*

GORDON J. QUIST, District Judge.

At the close of the Government's case-in-chief, Defendant Gerald Singer has moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a). For the reasons set forth below, the Court will grant Defendant's motion for purposes of Count 8.

■ Rule 29(a) states in part:

After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction.

Fed.R.Crim.P. 29(a). The test for reviewing a motion for judgment of acquittal "is the same as the test for reviewing a claim that the evidence is insufficient to support conviction." *United States v. Abner*, 35 F.3d 251, 253 (6th Cir.1994). The standard for determining the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). The United States Supreme Court has explicitly rejected the argument that the government's burden includes the affirmative duty to eliminate every reasonable hypothesis except guilt, noting that the "better rule" is that the "jury is properly instructed on the standards for reasonable doubt. . . . If the jury is convinced beyond a reasonable doubt, we can require no more." *Holland v. United States*, 348 U.S. 121, 139–40, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954) (internal citations omitted). "Circumstantial evidence in this respect is intrinsically no different from testimonial evidence." *Id.* at 140, 75 S.Ct. at 137.

■ In determining the sufficiency of the evidence, a court will consider all the evidence admitted at trial, even if "that evidence was admitted erroneously." *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 672, 175 L.Ed.2d 582 (2010) (quoting *Lockhart v. Nelson*, 488 U.S. 33, 41, 109 S.Ct. 285, 291, 102 L.Ed.2d 265 (1988)); *see also United States v. Clay*, 667 F.3d 689, 701 (6th Cir.2012). However, a court will not "weigh the evidence, assess

the credibility of the witnesses, or substitute [its] judgment for that of the jury." *United States v. Conatser*, 514 F.3d 508, 518 (6th Cir.2008). It is the jury's role to determine the weight of the evidence and assess the credibility of the witnesses. *See, e.g., United States v. Beverly*, 369 F.3d 516, 532 (6th Cir.2004); *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993).

In Count 8, the Government has charged Defendant with committing arson of an investment property located at 2340 Wood Street, Muskegon Heights, Michigan (the Wood Street property) on or about August 22, 2002.

█ The relevant federal statute provides:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both; and if personal injury results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall be imprisoned for not less than 7 years and not more than 40 years, fined under this title, or both; and if death results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment.

18 U.S.C. § 844(i). "To maintain a prosecution under 18 U.S.C. § 844(i), the government must prove that the defendant: (1) maliciously; (2) damaged or destroyed a building, vehicle, or other real or personal property; (3) by means of fire or explosive; and (4) the building, vehicle, or personal or real property was used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." *United States v. Gullett*, 75 F.3d 941, 947 (4th Cir.1996).

█ The Supreme Court has interpreted the fourth element as requiring the use of the property to be "active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce." *Jones v. United States*, 529 U.S. 848, 855, 120 S.Ct. 1904, 1910, 146 L.Ed.2d 902 (2000) (citing *Bailey v. United States*, 516 U.S. 137, 143, 145, 116 S.Ct. 501, 505, 506, 133 L.Ed.2d 472 (1995), *superceded by statute as recognized by Abbott v. United States*, —— U.S. ——, 131 S.Ct. 18, 25, 178 L.Ed.2d 348 (2010)); *see also United States v. Laton*, 352 F.3d 286, 297 (6th Cir.2003). The *Jones* Court outlined a two-part inquiry for assessing the applicability of § 844(i): First, a court must determine the function of the building itself, and, second, a court must ask whether that function affects interstate commerce. *Jones*, 529 U.S. at 854, 120 S.Ct. at 1910. The Court expressly limited the application of § 844(i) to "only property *currently* used in commerce or in an activity affecting commerce." *Id.* at 859, 120 S.Ct. at 1912 (emphasis added). Ultimately, the Court held that a private residence does not fit within § 844(i) where its only relationship to interstate commerce is the receipt of natural gas, a mortgage, or an insurance policy because such a limited nexus does not constitute "active employment." *Id.* To hold otherwise, the Court explained, would mean,

> [H]ardly a building in the land would fall outside the federal statute's domain. Practically every building in our cities, towns, and rural areas is constructed with supplies that have moved in interstate commerce, served by utilities that have an interstate connection, financed

or insured by enterprises that do business across state lines, or bears some other trace of interstate commerce.

*Id.* at 857, 120 S.Ct. at 1911 (citing *FERC v. Mississippi,* 456 U.S. 742, 757, 102 S.Ct. 2126, 2136, 72 L.Ed.2d 532 (1982)).

The evidence presented at trial is that on or about February 2, 2002, Defendant sold the Wood Street property to Ray M. Haynes and Stacey R. Tyler by land contract. This was approximately seven months before the fire at issue in Count 8. The land contract installment agreement (Land Contract) was admitted as evidence. The Land Contract states:

> [I]f Purchaser shall first make the payments and perform Purchaser's covenants hereunder, Seller hereby covenants and agrees to convey to Purchaser in fee simple by Seller's recordable deed . . . the [Wood Street property].

(Gov't Ex. 4.5.) The Seller is named as AArmor Realty & Investments LLC.[1] Haynes and Tyler are named as the Purchaser. Pursuant to the Land Contract, the title remained in AArmor's name until Haynes and Tyler paid AArmor the balance. Haynes and Tyler and their children lived in the Wood Street property as their residence. On or about June 18, 2003, about ten months after the fire, Haynes and Tyler paid AArmor the remaining balance of $31,500.00 and AArmor conveyed the property to them. (Gov't Exs. 4.25, 4.32, 4.34.)

On the basis of these facts, the government argues that the Wood Street property was an investment property, not a private residence.[2] In support of its position, the government cites *United States v. Veysey,* 334 F.3d 600 (7th Cir. 2003) and *United States v. Wiegand,* No. 93–1735, 1994 WL 714347 (6th Cir. Dec. 22, 1994). In *Veysey,* the court held that a single family home rented pursuant to a lease (with the option to buy at the end of the lease) was used in interstate commerce. 334 F.3d at 603. Observing that a property can "drift[ ] in and out of interstate commerce," the court stated, "[h]ad [the defendant] burned down the [owner-occupied] house while the original owner was living in it or had he burned it down after exercising his option and buying the house, the arson would have been beyond the reach of the federal statute." *Id.* Thus, the court looked to the use of the property at the time of the fire and determined that, as a rental property, it was used in interstate commerce. *Id.; see also Russell v. United States,* 471 U.S. 858, 862, 105 S.Ct. 2455, 2457, 85 L.Ed.2d 829 (1985) (observing that rental of real estate is "unquestionably" an activity that affects interstate commerce).

In *Wiegand,* the Sixth Circuit held that a property purchased by land contract fell within the limits of § 844(i) because (1) neither the buyers nor sellers had lived in the house, (2) both the buyers and sellers

---

**1.** At trial, the Government introduced evidence to show a connection between AArmor/Mark Singer and Defendant. (*See, e.g.,* Gov't Ex. 4.54.)

**2.** The parties have stipulated that the properties named in Counts 8–9 constitute "investment properties" for purposes of § 844(i). (Stipulation of Uncontested Facts, Docket no. 97, Page ID 577.) However, "a court is free to disregard stipulations if parties have spoken to 'the legal effect of admitted facts . . . since the court cannot be controlled by agree-

ment of counsel on a subsidiary question of law.' " *Marden v. Int'l Assoc. of Machinists & Aerospace Workers,* 576 F.2d 576, 580 (5th Cir.1978) (quoting *Swift & Co. v. Hocking Valley R.R. Co.,* 243 U.S. 281, 289, 37 S.Ct. 287, 290, 61 L.Ed. 722 (1917)); *see also Andrews v. St. Louis Joint Stock Land Bank,* 107 F.2d 462, 470 (8th Cir.1939) ("[I]t is the duty of the court to determine the law regardless of the stipulation of the parties."); *Bear River Paper & Bag Co. v. City of Petoskey,* 241 F. 53, 55–56 (6th Cir.1917).

purchased the property for the purpose of renovating and selling it at a profit, and (3) the buyers and the sellers had installed new electrical wiring and plumbing materials that had been purchased in interstate commerce.[3] 1994 WL 714347, at *3. In determining the use for which the property was held, the Sixth Circuit referred to both the buyers' current use and the sellers' prior use of the property. However, because *Jones* later limited the scope of § 844(i) to "property *currently* used in commerce or in an activity affecting commerce," the correct analysis is to look to the property's use at the time of the fire, not its prior use. *See* 529 U.S. at 859, 120 S.Ct. at 1912 (emphasis added).

■ The facts of this case are distinguishable from both *Veysey* and *Wiegand.* Here, unlike *Veysey*, the buyers in the Land Contract had already purchased the property and, unlike *Wiegand*, the buyers were using it as their private residence at the time of the fire. The buyers did not use any portion of the property for commercial purposes. Nonetheless, the Government argues that the Court should look to the use of the property from the perspective of seller AArmor, not the buyers, because AArmor still held the deed pursuant to the Land Contract.

■ In Michigan, the term "land contract" is commonly used to refer to " 'agreements for the sale of an interest in real estate in which the purchase price is to be paid in installments (other than an earnest money deposit and a lump-sum payment at closing) and no promissory note or mortgage is involved between the buyer and seller.' " *Zurcher v. Herveat,* 238 Mich.App. 267, 291, 605 N.W.2d 329, 341 (1999) (quoting 1 Cameron, Michigan Real Property Law (2d ed.) § 16.1, p. 582). Michigan courts have "consistently held that under a land contract, although the vendor retains legal title until the contractual obligations have been fulfilled, the vendee is given equitable title, and that equitable title is a present interest in realty that may be sold, devised, or encumbered." *Graves v. Am. Acceptance Mortg. Corp.,* 469 Mich. 608, 614, 677 N.W.2d 829, 833 (2004); *see also Bowen v. Lansing,* 129 Mich. 117, 118–19, 88 N.W. 384, 385 (1901). "While [the vendor] holds legal title, [the vendee] is the owner in equity. The claim of the vendor is but an ordinary money debt, secured by the contract." *Id.* (quoting *Walker v. Casgrain,* 101 Mich. 604, 608, 60 N.W. 291, 292 (1894)). "[A] land contract may be recorded, and the recording of a land contract 'shall have the same force and effect' as the recording of a deed." *Ligon v. City of Detroit,* 276 Mich. App. 120, 125, 739 N.W.2d 900, 904 (2007) (quoting Mich. Comp. Laws § 565.354).[4] Unlike a mortgage, in a land contract, the seller retains legal title until the buyer performs all of the contract obligations. *See, e.g., Zurcher,* 238 Mich.App. at 291, 605 N.W.2d at 341. However, for purposes of determining the "use" of the property, there is no material distinction between a land contract and a mortgage, as

---

3. The *Jones* decision has since invalidated the Sixth Circuit's third reason regarding utilities and materials purchased in interstate commerce. *See* 529 U.S. at 857, 120 S.Ct. at 1911.

4. A buyer in a land contract and a mortgagor have "nearly identical" protection from foreclosure. 1 Cameron, Michigan Real Property Law (3d ed.) § 16.19, p. 628–29; *see also* Mich. Comp. Laws § 600.3101 (outlining the same procedure for foreclosing mortgages of real estate and land contracts); MCR 3.410. Some Michigan courts have also held that the buyer-seller relationship creates fiduciary obligations between the parties to a land contract. *See, e.g., Curry v. Curry,* 213 Mich. 309, 315, 182 N.W. 98, 100 (1921); *but see Detroit & Sec. Trust Co. v. Kramer,* 247 Mich. 468, 471, 226 N.W. 234, 235 (1929) (declining to find a fiduciary relationship).

compared to a lease. Whereas a land contract triggers the doctrine of equitable conversion and the rights to sell, devise, or encumber the property, a lease does not. *Cf. Graves*, 469 Mich. at 614, 677 N.W.2d at 833. Therefore, the correct analysis in light of *Jones* is to look to the current use of the property at the time of the fire; in the case of a land contract, that use is the use to which the buyer has put the property because the seller's use has terminated.[5]

In this case, employing the two-part *Jones* inquiry for assessing the applicability of § 844(i), the function of the Wood Street property at the time of the fire was use as a private residence. The Supreme Court has held that a private residence is "a dwelling place used for everyday family living," and not a property used in interstate commerce or in an activity affecting interstate commerce for purposes of § 844(i). 529 U.S. at 859, 120 S.Ct. at 1912. Thus, viewing the evidence in the light most favorable to the Government, this Court finds that the evidence in this case is insufficient for any rational trier of fact to find the essential elements of arson under § 844(i) beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.

### Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Judgment of Acquittal on Count 8.

---

5. It makes no difference that a seller continues to have an investment property interest in receiving monthly installment payments from the buyer. In *Jones*, the Supreme Court rejected an analogous argument in the context of a mortgage for a private residence. *Jones*, 529 U.S. at 856, 120 S.Ct. at 1910 ("Surely it is not the common perception that a private, owner-occupied residence is 'used' in the 'activity' of receiving natural gas, a mortgage or an insurance policy...."). Similarly, the Government's argument that the property was used in interstate commerce because Defendant and AArmor held insurance on it fails under the same analysis. Defendant, just like a bank/mortgagee, retained an interest in the property. Therefore, it would be expected that he would obtain insurance on the property to protect his interest. In fact, insurance companies usually require mortgagees to sign off on payments made to insurance claims.