# STATE OF MICHIGAN

# COURT OF APPEALS

---

JP MORGAN CHASE BANK, N.A.,

        Plaintiff-Appellee,

v

STACEY BAYLE,

        Defendant,

and

BRENDA YONKMAN,

        Defendant-Appellant.

UNPUBLISHED
April 26, 2016

No. 325544
Muskegon Circuit Court
LC No. 13-049307-CH

---

Before: SAAD, P.J., and BORRELLO and GADOLA, JJ.

PER CURIAM.

In this action to quiet title, defendant Brenda Yonkman appeals the trial court's order that granted plaintiff JP Morgan's motion for summary disposition and declared JP Morgan's mortgage interest in the subject property superior to the mortgage interest in the same property held by Yonkman. For the reasons set forth below, we affirm in part and reverse in part.

The instant dispute concerns property commonly known as 2504 Crozier Street in Muskegon, Michigan. The record reflects that on May 21, 2007, defendant Stacey Bayle purchased the subject property from Homeland Developers, Inc., of which Yonkman was its president. To facilitate the purchase of the property, Bayle received a loan from Chase Bank for the sum of $99,200, the entirety of which she used toward the purchase price of the home. In exchange, Bayle granted Chase a mortgage interest in the subject property to secure repayment of the loan. The mortgage was executed on the date of closing, June 14, 2007, and was ultimately recorded on June 19, 2007. The mortgage was subsequently assigned to JP Morgan.[1]

---

[1] For simplicity, we will refer to this mortgage as the "bank mortgage."

-1-

Purportedly, Bayle also borrowed $27,027.01 from Yonkman, in her individual capacity, which was evidenced by a mortgage that was recorded on June 19, 2007, approximately three hours before the bank mortgage was recorded.

Eventually, Bayle defaulted on the bank loan, and JP Morgan initiated the instant lawsuit seeking to have its interest in the property declared superior to that of Yonkman. JP Morgan subsequently moved for summary disposition under MCR 2.116(C)(10). The trial court granted that motion on the basis that although Yonkman's interest was recorded first, she had knowledge of JP Morgan's interest at the time she acquired hers. Accordingly, she was not a good-faith subsequent mortgagee and could not claim superiority under Michigan's race-notice statute, MCL 565.29.

We review a trial court's decision on a motion for summary disposition de novo. *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 583; 794 NW2d 76 (2010). Summary disposition under MCR 2.116(C)(10) is appropriate if, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). In deciding a motion under MCR 2.116(C)(10), the trial court considers affidavits, pleadings, depositions, admissions, and any other documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*.

## I. YONKMAN'S STATUS AS A VENDOR PURCHASE MONEY MORTGAGEE

Yonkman argues that the trial court erred in declaring JP Morgan's interest superior to hers because her mortgage was a *vendor* purchase mortgage, which purportedly is given a higher priority than a *third-party* purchase mortgage. We need not determine if Michigan has adopted the position relied on by Yonkman and put forth by Restatement Property, 3d, Mortgages, § 7.2(c), p 458, that a vendor purchase money mortgage is given a higher priority than a third-party purchase money mortgage, because there is no question that Yonkman was not a "vendor" in this case. The evidence is clear that the vendor, i.e., the seller of the property, was Homeland Developers, Inc. Yonkman was simply its president and signed the deed that transferred title to Bayer on behalf of the corporation. It is well established that "[a] corporation is an artificial being separate and distinct from its agents, officers, and stockholders." *Washington Agency, Inc v Forbes*, 309 Mich 683, 690; 16 NW2d 121 (1944). Therefore, as the trial court correctly ruled, any argument related to Yonkman's supposed status as a vendor who also supplied funds to purchase the property is misguided and necessarily fails. As a result, we affirm the trial court's grant of summary disposition based on this theory.

## II. YONKMAN'S STATUS AS A THIRD-PARTY PURCHASE MONEY MORTGAGEE

Yonkman also argues that even if she is not considered a vendor purchase mortgagee, there is a question of fact that she is a third-party purchase money mortgagee, which if true would grant her priority over JP Morgan because she recorded her interest first. We agree.

### A. APPLICATION OF MCL 565.29

" 'Michigan is a race-notice state, and owners of interests in land can protect their interest by properly recording those interests.' " *Richards v Tibaldi*, 272 Mich App 522, 539; 726 NW2d 770 (2006), quoting *Lakeside Assoc v Toski Sands*, 131 Mich App 292, 298; 346 NW2d 92 (1983). Indeed, "the holder of a real estate interest who first records his or her interest generally has priority over subsequent purchasers." *Richards*, 272 Mich App at 539. MCL 565.29 further provides in pertinent part:

> Every conveyance[2] of real estate within the state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser[3] in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded.

Generally, the first conveyance that was executed has priority over any subsequent conveyances. See *Cheboygan Co Const Code Dep't v Burke*, 148 Mich App 56, 59; 384 NW2d 77 (1985) (stating that the general rule is "first in time, first in right"); 55 Am Jur 2d, Mortgages, § 278, pp 37-38. But under Michigan's race-notice scheme, when the holder of a real estate interest fails to record its interest (i.e., the prior or first-in-time interest), that interest is deemed void but only against (1) any subsequent interest holder (2) who obtained its interest in good faith and for valuable consideration and (3) recorded first.[4] See *Coventry Parkhomes Condo Ass'n v Fed Nat'l Mtg Ass'n*, 298 Mich App 252, 256; 827 NW2d 379 (2012).

JP Morgan's reliance on this statute in support of its motion for summary disposition is misplaced. Primarily, in order for MCL 565.29 to "void" the Yonkman mortgage, as JP Morgan suggests, it would require the Yonkman mortgage to be considered the "prior" transaction and the bank mortgage to be considered the "subsequent" transaction. Here, the facts, when viewed in a light most favorable to Yonkman, the party opposing JP Morgan's motion for summary disposition, see *Maiden*, 461 Mich at 120, show that Yonkman's mortgage conveyance was *simultaneous* to the bank mortgage conveyance because both were purchase money mortgages.

A purchase money mortgage is "[a] mortgage or security device taken back to secure the performance of an obligation incurred in the purchase of the property." *Graves v American Acceptance Mtg Corp*, 469 Mich 608, 613; 677 NW2d 829 (2004), quoting *Black's Law Dictionary* (6th ed). "[A] purchase money mortgage takes effect immediately, as part of the 'same transaction by which seisin was acquired by the mortgagor.' " *Graves*, 469 Mich at 613, quoting *Fecteau v Fries*, 253 Mich 51, 55; 234 NW 113 (1931). In other words, "the purchase of the land and the mortgage are seen as simultaneous events, so that the mortgagor obtains the land *already encumbered* by the mortgage." *Bednarowski & Michaels Dev, LLC v Wallace*, 293 F Supp 2d 728, 733 (ED Mich, 2003).

---

[2] A "conveyance" is expressly defined to include the granting of a mortgage. MCL 565.35.

[3] A "purchaser" is expressly defined to include a mortgagee. MCL 565.34.

[4] Because the statutory condition requires that the initial conveyance *not* be recorded, it means that the subsequent interest holder necessarily recorded its interests first.

There is no genuine issue of material fact that the mortgage held by JP Morgan is a third-party purchase money mortgage. Bayle obtained a loan from Chase in the amount of $99,200, the totality of which was used toward the purchase of the subject property. To secure repayment of that loan, Bayle in turn granted a mortgage to Chase on the subject property. The record reflects that the bank mortgage was granted on the same day that the property was purchased. Thus, the obligation incurred by Bayle under the bank mortgage "arose as part of the same transaction" in which Bayle purchased the property securing the mortgage, and is a purchase money mortgage. *Graves*, 469 Mich at 614.

Similarly, when the evidence is viewed in a light most favorable to Yonkman, there is a question of fact that her mortgage also is a third-party purchase money mortgage. It is undisputed that Bayle granted a mortgage to Yonkman. The mortgage itself is dated June 22, 2007, but it was recorded June 19, 2007, so it is clear that it was *not* executed on June 22, as the document otherwise indicates. In an affidavit that was submitted to the trial court, Yonkman averred that the mortgage was indeed executed at the closing on June 14 and that the reference to June 22 was erroneous. Again, looking at the evidence in a light most favorable to Yonkman, a natural conclusion is that the mortgage was executed on June 14 as a purchase money mortgage.[5]

The existence of a genuine issue as to whether Yonkman's mortgage is a purchase money mortgage precluded the trial court from granting summary disposition in JP Morgan's favor. If both JP Morgan and Yonkman hold purchase money mortgages, their interests arose at the exact same time, i.e., at the time title to the property was acquired by Bayle. *Bednarowski*, 293 F Supp 2d at 733; see also *Graves*, 469 Mich at 613, citing *Fecteau*, 253 Mich at 55. In such a situation, the "subsequent purchaser in good faith" provision of the race-notice statute would not decide priority because neither party can be said to be "subsequent" to the other.

Moreover, while there is evidence that Chase qualified as a bona fide good-faith purchaser for value, it is not disputed that Yonkman recorded her interest first, and not Chase. Therefore, two of the three requirements needed to void an interest under MCL 565.29 are not satisfied, and the trial court erred in granting summary disposition based on this statute.

B. PRIORITY BETWEEN COMPETING PURCHASE MONEY MORTGAGES

Assuming Yonkman has a purchase money mortgage, we must determine if JP Morgan nonetheless is entitled to judgement as a matter of law. See *Brown v Brown*, 478 Mich 545, 552; 739 NW2d 313 (2007) ("Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law.").

---

[5] JP Morgan relies on the fact that the HUD Settlement Statement that was provided at closing only referenced a purchase loan by Chase and did not mention any funds coming from Yonkman. While this fact certainly would be relevant in a trial setting for a finder of fact, it is not dispositive in a motion for summary disposition, where we must view *all* the evidence in a light most favorable to the non-moving party. Yonkman has submitted evidence that the mortgage was given on the day of the closing, and the natural inference is that the accompanying loan was used for the purchase of the property. At a minimum, it establishes a genuine issue of fact.

Establishing the priority between two competing purchase money mortgages appears to be an issue of first impression in Michigan. In this instance, because both mortgages attached at precisely the same instant, the general rule that "first in time, first in right" is not helpful. And we have already determined that Michigan's race-notice statute also is not particularly of assistance because there are no "prior" and "subsequent" conveyances.[6]

We note that in addition to being an issue of first impression in this state, there is scant case law from other jurisdictions that address competing third-party purchase money mortgages as well. However, Minnesota, which also is a race-notice state, recently was confronted with this very same issue and held that, irrespective of the notice either party had of the other's purchase money mortgage interest, priority is simply determined by who recorded its interests first. *Slattengren & Sons Props, LLC v RTS River Bluff, LLC*, 805 NW2d 279, 283-284 (Minn App, 2011). We agree with this rule and hold that the priority between competing third-party purchase money mortgages is to be resolved by which mortgage is recorded first. With the transactions having taken place simultaneously, the only meaningful way to break this temporal tie is to see which conveyance was recorded first. Cf. *Richards*, 272 Mich App at 539; see also 55 Am Jur 2d, Mortgages, § 290, p 50 (recognizing that priority can be determined for two contemporaneous mortgages on the basis of which was recorded first). Accordingly, assuming that both Yonkman and JP Morgan possess purchase money mortgages, JP Morgan cannot establish priority and is not entitled to judgment because Yonkman recorded her interest first.

In light of the above analysis, because there is a question of fact regarding whether Yonkman has a purchase money mortgage, the trial court erred when it granted summary disposition in favor of JP Morgan. For purposes of the race-notice statute, Yonkman's knowledge of the existence of the bank mortgage is not dispositive because neither mortgage

---

[6] We note that the Restatement suggests that when only one purchase money mortgagee has notice of another purchase money mortgagee, then the mortgagee without notice should be considered the subsequent taker "in fairness" and therefore eligible for the protection of the recording acts. Restatement Property, 3d, Mortgages, § 7.2, comment *d*, p 465. The Restatement thus concludes that "[i]n a race-notice type of jurisdiction, the lender who takes without notice *must also record first in order to prevail.*" *Id.* (emphasis added). This principle could be of benefit to JP Morgan, as there is no evidence that Chase was aware of the Yonkman mortgage at the time of the closing and there was evidence that Yonkman was aware of the Chase mortgage. However, we reject this principle because our rules of statutory construction do not allow a "simultaneous" transaction to be considered "subsequent" based on principles of fairness. See *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002) ("When the Legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself, and judicial construction is not permitted. . . . Because the proper role of the judiciary is to interpret and not write the law, courts simply lack authority to venture beyond the unambiguous text of a statute."). In any event, even if we did consider the bank mortgage as being subsequent to the Yonkman mortgage, the bank mortgage was recorded *after* the Yonkman mortgage was recorded. Thus, even under the Restatement's fairness principles, the Yonkman mortgage still would have priority.

interest attached to the property "subsequent" to the other. Furthermore, when there are competing purchase money mortgages, priority is determined by which was recorded first, and here, Yonkman recorded her interest first. Of course, our opinion does not preclude the trial court from finding, after a trial or other proceeding, that the Yonkman mortgage was *not* a purchase money mortgage, and therefore junior to the bank mortgage, but on the specific motion and record before us, we must reverse.

Affirmed in part and reversed in part. No costs, as neither party prevailed in full. MCR 7.219.


/s/ Henry William Saad
/s/ Stephen L. Borrello


-6-